UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11803-MLW

SHENIA DANCY-STEWART as
Administratrix of the Estate of
EVELINE BARROS-CEPEDA, MARIA
DaROSA, and LUIS CARVALHO,
    Plaintiffs,

v.

THOMAS TAYLOR, Jr., and the CITY
OF BOSTON,
    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT CITY OF BOSTON'S MOTION TO DISMISS COUNTS IV, IX, X, XI,
XIV, AND XV OF PLAINTIFFS' COMPLAINT.**

**I. INTRODUCTION**

The Plaintiffs' Complaint alleged the following claims against the Defendant, City of

Boston, (the "City"):

1.   Civil Rights violations under 42 U.S.C. §1983 (Count IV);
2.   Wrongful death under M.G.L. ch. 229 and ch. 258 (Counts IX, X);
3.   Survival action (Count XI);
4.   Gross negligence under M.G.L. ch. 258 (Count XIV); and
5.   Negligence under M.G.L. ch. 258 (Count XV).

Each claim arises from the alleged conduct of Boston police officers in response to pursuing

Brima Wurie Jr. on September 8, 2002.  After Mr. Wurie failed to stop for a red-light, failed

to stop for a police officer, and struck a uniformed police officer with his motor vehicle, a

back seat passenger in the vehicle driven by Mr. Wuire was fatally shot, Eveline Barros-

Cepeda.  The estate of Eveline Barros-Cepeda and two other passengers, Maria DaRosa and

Luis Carvalho, are the Plaintiffs in this action.

1

The City of Boston seeks dismissal of all Counts Plaintiffs bring against it because: (1) under 42 U.S.C. Section 1983 municipalities cannot be held liable merely through the theory of respondeat superior; (2) Plaintiffs have not plead that the City of Boston had a policy or custom that caused a constitutional violation; (3) the alleged conduct of City of Boston employees in this case involved discretionary functions and therefore, the City is immune from suits alleging negligence pursuant to M.G.L. ch. 258, §10(b); (4) the City of Boston is immune from negligence suits under M.G.L. ch. 258, §10(j), since Plaintiffs' alleged harms were caused by a third person and the City of Boston did not originally cause the situation which led to Plaintiffs' harms; and (5) the City is immune from negligent training and supervision claims pursuant to M.G.L. ch. 258, §10(b) and §10(j).

## II. APPLICABLE STANDARD

A motion to dismiss is to be allowed when a Plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246 (1980); Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998); Williams v. Astra USA, Inc., 68 F. Supp. 2d 29 (D. Mass. 1999). In considering a motion to dismiss, the Court is obliged to accept the Plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the Plaintiff's favor. Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). This indulgence, however, does not require the Court to credit bald assertions, unsubstantiated conclusions or outright vituperation. Correa-Martinez v. Arrillaya-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). Within this analytical framework, the Plaintiffs have failed to plead facts sufficient to state a claim against the City, and accordingly, the City's Motion to Dismiss should be granted.

### III. <u>ARGUMENT</u>

    A.    **THE CITY OF BOSTON IS ENTITLED TO DISMISSAL OF THE PLAINTIFFS CLAIMS UNDER 42 U.S.C. SECTION 1983, COUNT IV, BECAUSE THE CLAIMS ARE NOT ACTIONABLE UNDER A RESPONDEAT SUPERIOR THEORY.**

Here, the Plaintiffs have failed to allege an actionable municipal claim against the Defendant, City of Boston. Liability against the City of Boston is governed by the Supreme Court's seminal decision in <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), which held that a claim against a municipality could be actionable only in cases when its agents and employees committed constitutional violations, but not under a theory of respondeat superior. <u>Id.</u> at 691-95. "The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto respondeat superior, has set a very high bar for assessing municipal liability under <u>Monell</u>." <u>Young v. City of Providence ex rel. Napolitano</u>, 404 F.3d 4, 26 (1st Cir. 2005).

Accordingly, Plaintiffs' claim must satisfy certain distinct requirements to be actionable. The Plaintiffs must establish that "[t]he alleged municipal action at issue must constitute a 'policy or custom' attributable to the City." <u>Young, supr</u>a at 26, <u>citing</u> <u>Silva v. Worden</u>, 130 F.3d 26, 31-32 (1st Cir. 1997). Additionally, the Supreme Court "has imposed two additional requirements [which the Plaintiffs must also show]: 1) that the municipal policy or custom actually have caused the Plaintiff's injury, and 2) that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.' " <u>Id.</u>, <u>citing</u> <u>County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 404 (1997); <u>see</u> <u>also</u> <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1161-63 (1st Cir. 1989).

As to the first requirement, the Plaintiffs must identify and sufficiently allege a policy or custom attributable to the City, but they have failed to do so with respect to the

3

alleged shooting incident between Taylor and the Plaintiffs, fleeing suspects. The Plaintiffs must allege a policy that has been established by the municipal "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, supra at 694. As the Supreme Court has explained, a policy constitutes "formal rules or understandings" that are either to be followed under certain circumstances or that may be tailored to a particular situation." Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986) (majority opinion). It may include "a specific decision or set of decisions designed to carry out such a chosen course of action," Id. at 481 n.9; or "a course of action consciously chosen from among various alternatives." Id. at 483 (plurality opinion) (citing City of Oklahoma v. Tuttle, 471 U.S. 808, 823, (1985) (plurality opinion)). Moreover, in a plurality opinion, the Supreme Court has established that only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Id. at 483.

Here, the Plaintiffs have not specifically identified nor alleged any such official policy to subject the City to liability under § 1983. Rather, Plaintiffs have only offered conclusory, vague and ambiguous allegations. The Plaintiffs do not provide any factual support for their allegations of an actionable "policy." It is simply insufficient for Plaintiffs to generally and summarily allege without any factual support that the City of Boston maintained policies or customs that exhibited deliberate indifference to individuals' constitutional rights. Equally insufficient is Plaintiffs' allegation that it was the policy and/or custom of the City of Boston "to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the City, including but not limited to the unlawful, unreasonable and unjustified stopping of moving vehicles by shooting at them and the people inside them." Here, Plaintiffs' contention amounts to a bald assertion that the City conducted inadequate investigations generally and including incidents involving shootings and moving vehicles. Plaintiffs, fail, however,

4

to provide a single fact substantiating this assertion. Further, Plaintiffs' Complaint is devoid of any facts demonstrating the unconstitutionality of other shooting incidents.

Moreover, Plaintiffs cannot even establish a constitutional violation in Taylor's alleged conduct. It is well-established that an officer shooting at a moving vehicle does not constitute a constitutional violation per se. See Tennesee v. Garner, 471 U.S. 1 (1985) (holding that shooting at a fleeing suspect is not unconstitutional if reasonable and based upon probable cause "to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others"); Landol-Rivera v. Cruz Cosme et al, 906 F.2d 791 (1st Cir. 1990) (same and applying Garner).

As for any theory of a policy based on a failure to train or supervise, Plaintiffs' claim also fails. The Plaintiffs generally allege that "it was the policy and/or custom of the City of Boston to inadequately supervise and train its police officers, including Defendant Taylor, thereby failing to adequately discourage further constitutional violations on the part of its police officers," and that that the City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct. Such allegations are insufficient.

In City of Canton v. Harris, the Court addressed the question of whether a "municipality can ever be held liable under 42 U.S.C. §1983 for constitutional violations resulting from its failure to train municipal employees" and held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of person with whom the police come into contact." Id. at 1204. Only where such deliberate indifference to the rights of the City's inhabitants is shown in a lack of training can such a shortcoming be thought of as a city policy or custom (a deliberate or conscious choice by the City). See City of Canton v. Harris,

489 U.S. 378, 388-89 (1989); Williams v. City of Boston, 784 F.2d 430, 434-435 (1st Cir. 1986).

Moreover, the Court imposed the requirement that a Plaintiff identify particular areas in the city's training program that were deficient and further establish that these identified deficiencies in the training program were "closely related to the ultimate injury." Canton, 109 S.Ct. at 1206. Under such requirements, the Plaintiffs:

> must allege either that (1) the City knew when it hired the officers that the risk of future constitutional violations . . . was "so obvious" that its failure to train him would likely result in continued violations or 2) the City subsequently learned of a more serious incident, yet took no action to provide the necessary training.

Chaabouni v. City of Boston, 133 F. Supp. 2d 93, 100 (2001) (quoting Canton, 489 U.S. at 388-89). "If a Plaintiff does not allege either of these underlying factual grounds in a failure to train case, then he has not alleged deliberate indifference on the part of the municipality." Id. "Without an allegation of deliberate indifference, a claim against a municipality is without foundation." Id.

Here, the Plaintiffs have failed to satisfy these requirements. While Plaintiffs' complaint arguably includes the key terminology from relevant case law to allege a claim of failure to train, nonetheless, Plaintiffs fail to allege any specific facts or provide any further evidence to support their conclusory allegations. Plaintiffs' bald assertion regarding police officer training by the City lacks mention of any particular deficiencies with regard to Officer Taylor's training. Plaintiffs' allegations that "[t]he City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct" also falls far short of the requirement. A general reference to "police misconduct" is insufficient and does not constitute an allegation of a deficiency that is "closely related to the ultimate injury." Furthermore, Plaintiffs' complaint does not allege that the City, as a matter of policy, chose to train its police officers with a deliberate

indifference to the rights of its citizens and that the Plaintiffs were injured as a result. Overall, "a training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a Plaintiff would prefer is insufficient to make such a showing." Young, supra at 27. Here, the Plaintiffs' claim fails as a matter of law.

In similar fashion, Plaintiffs also fail to successfully plead that a municipal "custom" caused a constitutional deprivation. In order for a "custom or usage" to constitute actionable municipal liability, the duration and frequency of the practice must be so widespread and longstanding that the decision making officials' actual or constructive knowledge of the custom can be established. Miller v. Kennebec County, 219 F.3d 8, 12 (1st Cir. 2000). A municipality is liable under a "custom" theory because it tolerated or acquiesced in the widespread unconstitutional practice. See also Britton v. Maloney, 901 F.Supp. 444, 450 (D.Mass.1995) ("Unlike a "policy", which comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottomup. Thus, the liability of the municipality for customary constitutional violations derives not from its creation of the custom, but from its tolerance of or acquiescence in it.").  Here, the Plaintiffs have not provided any factual support for their assertion of a custom of unconstitutional shootings. They have failed to provide any specific factual support that any prior Boston police shooting at a moving vehicle was unconstitutional or that any such unconstitutional practice was tolerated.  In fact, they allege themselves that the very September 8, 2002 incident was not found improper or unconstitutional.  (see Pl's Comp. ¶35).

Not only have the Plaintiffs failed to identify a municipal policy or custom, but they have also failed to sufficiently allege that the municipality subjected them or caused them to be subjected to a constitutional deprivation. See St. Louis v. Praprotnik, 485 U.S. 112,

7

122 (1988). That is, Plaintiffs "must also demonstrate that, through its *deliberate* conduct the municipality was the *moving force* behind the injury alleged." Bd. of the County Com'rs. v. Brown, 520 U.S. 397, 404 (1997). Plaintiffs must establish that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. This the Plaintiffs cannot do.

As discussed supra, the Plaintiffs have not alleged an actionable constitutional violation. While the Plaintiffs have alleged that Officer Thomas Taylor was involved in a shooting incident with the Plaintiffs, they have not alleged that such shooting was unconstitutional or provided the requisite factual support demonstrating that such shooting was unconstitutional. Moreover, even assuming that a constitutional violation has been alleged, Plaintiffs have not sufficiently alleged that the City of Boston was the "moving force" behind such constitutional violation. A vague assertion of a municipality's "deliberate indifference" to individuals' constitutional rights does not constitute a sufficient allegation that City's action was taken with the requisite degree of culpability and directly linked to the Plaintiffs' deprivation of federal rights." Id. Moreover, any allegation that Officer Taylor's actions constitute "the moving force" are also insufficient as Officer Taylor does not qualify as an official policymaker for the City of Boston nor have the Plaintiffs pled facts demonstrating as much.

Finally, any attempt by the Plaintiffs to recast the isolated incident on September 8, 2002 as evidence of an official policy or custom is not actionable. "A single incident of misconduct, without other evidence cannot provide the basis for municipal liability under [section] 1983." See Bordanaro v. McLeod, 871 F.2d 1151, 1161 n.8 (1st Cir. 1989)(emphasis added); See also, Armstrong v. Lamy, 938 F.Supp. 1018, 1036-37 (D.Mass. 1996). "[M]unicipal liability under Section 1983 attaches where—and only where—a

8

deliberate choice to follow a course of action is made from among various alternatives by city policymakers." Harris, 489 U.S. 378, 389 (1989) (citing Oklahoma City v. Tuttle, 471 U.S. at 823 (1985)). Even the Plaintiffs themselves allege that no misconduct was found in this isolated September 8, 2002, incident as they claim a grand jury convened following the incident and returned no indictment against Officer Taylor.

Absent an affirmative showing of the above-mentioned requirements of a policy or custom, there can be no liability against the Defendant City under Section 1983. See also City of Canton v. Harris, 489 U.S. 378 (1989); Santiago v. Fenton, 891 F.2d 373, 381-82 (1st Cir. 1989); Stratton v. City of Boston, 731 F. Supp. 42, 47 (D. Mass. 1989). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. New York City Department of Social Services, 436 U.S. at 691. Accordingly, the Plaintiffs' section 1983 claim must be dismissed.

### B. COUNT IX, X, XI, XIV, AND XV MUST BE DISMISSED BECAUSE THE CITY IS IMMUNE FROM LIABILITY FOR DISCRETIONARY FUNCTIONS PURSUANT TO M.G.L. CH. 258, SECTION 10(b).

The Massachusetts Tort Claims Act (hereinafter "the Act") was intended as "a comprehensive and uniform regime of tort liability for public employers." Lafayette Place Assoc. v. Boston Redevelopment Authority, 427 Mass. 509, 534 (1998). The Act provides the sole remedy for persons alleging torts against municipalities, and it clearly immunizes them from liability for intentional torts. Lafayette, 427 Mass. at 533-35. Further, the Act waives a public employer's sovereign immunity by allowing for suit against the public employer for acts of its employees who, in the scope of their employment, cause personal injury or property damages through their negligence. M.G.L. ch. 258, §2. This waiver is subject to various limitations found in the Act, however, including Section 10(b), which

establishes the City's immunity from suit for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment whether or not the discretion is abused." M.G.L. ch. 258, §10(b).

To determine whether a Plaintiff's claim for negligent conduct on the part of a public employer is barred by M.G.L. ch. 258, § 10(b), the Supreme Judicial Court employs a two-prong test. Harry Stoller & Co. v. Lowell, 412 Mass. 139 (1992). This first step requires the Court to, "determine whether the governmental actor had any discretion at all as to what course of conduct to follow." Stoller, 412 Mass. at 141. Put differently, prong one asks whether the governmental actor had any discretion to do or not do what a Plaintiff claims caused her harm. If the allegedly tortuous action was prescribed by statute or regulation, or established agency practice, then the governmental actor had no discretion to exercise, and section 10(b) immunity does not apply. Alake v. City of Boston, 40 Mass. App. Ct. 610, 611 (1996).

The second, harder prong of the test asks, "whether the discretion exercised rises to a level of policy-making or planning, as that is the only type of discretion immunized by §10(b)." Alake, 40 Mass. App. Ct. at 612. This analysis distinguishes between those functions, which entail the exercise of judgment and reflect policymaking and planning -- meaning, those functions immunized under Section 10(b) -- and those functions that simply execute governmental policy. According to the Supreme Judicial Court (hereinafter "SJC"), if the answers to the following questions are in the affirmative, then governmental immunity likely attaches:

> [I]f the injury-producing conduct was an integral part of governmental policymaking or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the case could not be decided without usurping the power and responsibility of either the legislative or executive branch of government.

10

Stoller, at 142.

Here, as to prong-one, the decision by the Boston police officer to discharge his firearm at Mr. Wurie's moving vehicle was a discretionary decision, and the City as his employer is immunized from negligence suits pursuant to section 10(b) of the Act. At the time of the incident alleged in Plaintiffs' Complaint there existed no statute, regulation, or agency practice which precluded or encouraged the Boston Police Department to shoot at moving vehicles, which endangered the life of a fellow police officer or civilians. Rather, the decision to discharge his firearm involved discretion as to public safety for civilians, and the decision to shoot to stop a dangerous criminal falls under the same discretion. See Wheeler v. Boston Housing Authority, 34 Mass. App. Ct. 36 (1993)(because there was no statute or regulation setting forth particular security measure a public housing authority should implement, decisions regarding such measures are left to the discretion of each public housing authority); see also, Barnett v. City of Lynn, 433 Mass. 662, (2001)(SJC held that City exercised discretion in its decision not to erect a fence on stairs, or to remove snow from stairs, and therefore, City was immune from administratrix's negligence action under section 10(b) of chapter 258).

As to this second step, which asks whether the discretion involved in choosing the course of conduct rose to the level of policy-making or planning, the Plaintiffs' Complaint makes clear that the Boston police officer, Thomas Taylor, made a split-second discretionary decision to discharge his firearm as a means to best protect public safety. Further, the police officer's decision as to how to enforce the law and stop crime in this instance was made pursuant to his policy-making authority. Upon weighing the alternatives, however, the police officer's policy decision to discharge his firearm in an effort to get the vehicle to stop endangering civilians and police officers was discretionary. See Patrazza v. Commonwealth, 398 Mass. 464, 469-470 (1986)(holding that the decision to

11

adopt and implement policy of using unburied guardrail ends on limited access highways is precisely the kind of discretionary function which M.G.L. ch. 258, §10(b) was designed to protect).

Plaintiffs assert a variety of negligence actions against the City of Boston in their complaint: wrongful death, survival action, negligence and gross negligence. However, all of the Plaintiffs' negligence actions are subject to the same immunity from suit if, as in this case, the public employee's alleged conduct entails the performance or the failure to perform a discretionary function or duty. Thus the same section 10(b) analysis applies to wrongful death actions as other negligence actions brought under the Act. For instance, in Desjardins v. Commonwealth, 57 Mass. App. Ct. (2003), 2003 WL 124530, Jacqueline Desjardins was driving on a state highway during a snowstorm, and her vehicle crossed the centerline and collided with an oncoming vehicle. The executor of Desjardins' estate sued the Commonwealth for wrongful death alleging the Commonwealth's failure to properly maintain the highway during the storm caused her death. The Appeals Court held that the Commonwealth was entitled to immunity from liability under M.G.L. ch. 258, §10(b), "based upon the undisputed fact that the department's personnel were required to determine when, where, and to what extent plowing, sanding, or deicing of the roads should occur. . ." Desjardins, at ***2. Similarly, in this case, the police officer was required "to determine when, where, and to what extent" he should stop a moving vehicle from further endangering public safety. Accordingly, the decision was discretionary and therefore, the City is immune from liability for any alleged negligent conduct on behalf of its employees alleged in Plaintiffs' Complaint.

C.  **COUNT IX, X, XI, XIV, AND XV MUST BE DISMISSED BECAUSE THE CITY IS IMMUNE FROM LIABILITY UNDER THE SO-CALLED PUBLIC DUTY RULE PURSUANT TO M.G.L. CH. 258, SECTION 10(j)(3).**

In addition to immunity for discretionary decision-making in this case, the Act also exempts municipalities from "any claim based on an act or a failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortuous conduct of a third person, which is not originally caused by the public employer." M.G.L. ch. 258, 10(j)(3). Under the Act, an "original cause" is "an affirmative act (not a failure to act) by a public employer that creates the "condition or situation" . . . Jacome v. Commonwealth, 56 Mass. App. Ct. 486, 489 (2002). As the SJC explained in Brum v. Town of Dartmouth, 428 Mass. 684, 696 (1999), "the principal purpose of §10(j) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party." Thus, for liability to be imposed, the public employer "must have materially contributed to creating the specific 'condition or situation' that resulted in the harm." Jacome, supra, (quoting Kent v. Commonwealth, 437 Mass. 312, 319 (2002)).

In Brum, the son of Elaine Brum was stabbed to death at Dartmouth High School, by three armed individuals who had been in an altercation earlier in the day of the stabbing at the Defendant town school. Nonetheless, the SJC held that Dartmouth was immune from suit under section 10(j), for the alleged negligent failure to maintain adequate security measures at the school and specific failure to protect her son from a known threat that resulted in his death. In so holding, the Brum court reasoned that the City was not the original cause of Brum's death, but rather, a third party caused the "harmful consequences." Id. at 693. "Thus, there is immunity in respect to all consequences except where the 'condition or situation' was 'originally caused by the public employer.'" Id. at 692.

Likewise, here, the City of Boston was not the "original cause" of the condition that led to Plaintiffs' injuries. Moreover, the effort to stop Mr. Wurie's vehicle from further hazardous and criminal activity does not support an allegation of negligence. Instead, any action taken by the City was "to prevent or diminish" the harm already caused by Mr. Wurie. In sum, section 10(j) exempts the City from negligence liability for Ms. Barros-Cepeda's death and the injuries allegedly sustained by Ms. DaRosa and Mr. Carvalho.

### D. COUNTS X AND XV MUST BE DISMISSED BECAUSE THE CITY IS IMMUNE FROM NEGLIGENT TRAINING AND SUPERVISION CLAIMS.

Negligent training and supervision claims are barred by the discretionary function exception to the Act described above. Crete v. City of Lowell et al., 418 F. 3d 54 (1st Cir. 2005). In Crete, the First Circuit recognized that the SJC has identified a two step analysis for the application of the discretionary function exception to tort immunity, (described above in *section B* supra). Id. at 60. Further, the Crete Court held that the City had 'discretion' to hire an individual under the authority granted to it by relevant regulations and policy. Id. at 62-63. Likewise, applying this logic, the City has the same discretion regarding its decisions of when and how to train and discipline its police officers.

Moreover, the First Circuit Court of Appeals expressed confidence that the SJC would find that the discretion exercised by the City in hiring police officers was grounded in policy, and therefore immune from tort liability. Id. at 65. It logically follows, therefore, that supervision and training are grounded in policy and exempt from the Act's waiver of sovereign immunity. Accordingly, Plaintiffs' negligent supervision and training claims are barred because "uniformly the federal circuit courts under the FTCA have found that employer decisions such as hiring, discipline, and termination of employees are within the discretion function exemption." Id. at 64-65. The FTCA and MTCA "the Act" are parallel

14

statutes and the since the FTCA bars claims based on negligent hiring, training, and supervision, so too must the Act.

Thus, whether a decision comes within the protection of the discretionary function exemption is determined by the nature of the actions taken and on whether they are susceptible to policy analysis. Id. at 65. Hiring decisions, training decisions and supervision decisions are certainly susceptible to and involve policy analysis. Said decisions require cities to weigh public perception, budgetary constraints, and economic conditions when determining these issues. Accordingly, these type of decisions are "multi-factored" and require "the balancing of competing objectives;" indeed, they are of the "nature and quality that Congress intended to shield from tort liability." Id. at 65. In summary, Plaintiffs' contention that the City negligently trained or supervised its police officers must be dismissed.

Alternatively, Plaintiffs' claims for negligent supervision and training must be dismissed pursuant to M.G.L. ch. 258, §10(j). "Claims of failure to train or supervise are all claims based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance and thus are barred by §10(j)." Ward v. City of Boston, et al., 367 F. Supp. 2d 7, 16 (D.Mass. 2005)(citing Armstrong v. Lamy, 938 F. Supp. at 1044; Doe v. Old Rochester Regional District, 56 F. Supp.2d 114, 121 (D. Mass. 1999)(internal citations omitted). In Ward, the court dismissed Plaintiff's negligent supervision and training claims, on the grounds Plaintiff failed to show any evidence that the defendants were not properly trained or supervised. Id. at 16. Similarly, here, Plaintiffs fail to allege any facts to support their conclusory allegation that the City did not properly train or supervise its officers, particularly Officer Thomas Taylor; nor can they. For these reasons, Plaintiffs' negligent supervision and training claims must be dismissed.

IV. **CONCLUSION**

For the reasons stated above, the Defendant, City of Boston, respectfully requests that all counts against it be dismissed with prejudice.

        Respectfully submitted,

        DEFENDANT CITY OF BOSTON,

        Merita A. Hopkins
        Corporation Counsel

        By its attorneys:

        /S/ Kate Cook_____
        Kate Cook BBO# 650698
        Helen Litsas BBO#644848
        Assistant Corporation Counsel
        City of Boston Law Department
        Room 615, City Hall
        Boston, MA 02201
        (617) 635-4022 (Cook)
        (617) 635-4023 (Litsas)

**CERTIFICATE OF SERVICE**

I, Kate Cook, hereby certify that on October 21, 2005, I served <u>The Defendant City of Boston's Motion to Dismiss and Accompanying Memorandum of Law in Support Thereof</u> by mailing a copy, postage prepaid, to the following:

    Andrew Stockwell-Alpert
    11 Beacon Street, Suite 1210
    Boston, MA 02108

<u>October 21, 2005</u>      /s/ Kate Cook
Date                    Kate Cook

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

I hereby certify that undersigned counsel for the Defendant, City of Boston, discussed the above motion with Andrew Stockwell-Alpert via telephone on October 21, both in a good faith effort to resolve and narrow the issues presented by said motion, but that counsel were unable to confer or to resolve the issues prior to filing of the motion.

10/21/05                          /s/ Kate Cook
Date                                Kate Cook