UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11803-MLW

SHENIA DANCY-STEWART as )
Administratrix of the Estate of )
EVELINE BARROS-CEPEDA, MARIA )
DaROSA, and LUIS CARVALHO, )
    Plaintiffs )
 )
v. )
 )
THOMAS TAYLOR, Jr. and the )
CITY OF BOSTON )
    Defendants )

### THE PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT CITY OF BOSTON'S MOTION TO DISMISS COUNTS IV, IX, X, XI, XIV, AND XV OF PLAINTIFFS' COMPLAINT

**I.   INTRODUCTION**

This is an action brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the United States Constitution, Article XIV of the Massachusetts Declaration of Rights, M.G.L. c. 229, and M.G.L. c. 258 ("The Massachusetts Tort Claims Act" or "the Act"). Defendant Thomas Taylor, Jr., a police officer of the City of Boston, shot and killed Eveline Barros-Cepeda, a twenty-five year old wife and mother, without legal cause or excuse. He made an unreasonable seizure of her person and the person of Plaintiffs Luis Carvalho and Maria DaRosa. These violations were committed as a result of policies and customs of the City of Boston.

On September 8, 2002, at approximately 12:30 A.M., Barros-Cepeda, DaRosa, and Carvalho were rear seat passengers in a motor vehicle being operated on Dunkel Street in Dorchester, Massachusetts. When the operator of the motor vehicle turned onto Fayston Street, Officer Taylor, who was on foot at the intersection of Dunkel and Fayston Streets, lost sight of a fellow police officer who had been standing across the street. Without taking any action to verify that his fellow police officer had been or was being injured by the motor vehicle, Officer Taylor drew his service revolver and shot at least three bullets in the general direction of the motor vehicle and its operator. Officer Taylor had no knowledge of and did not observe anything that would lead him to believe that anyone in the motor vehicle was armed or dangerous, or that anyone in the motor vehicle had been or was presently involved in any criminal wrongdoing. There was no threat to Officer Taylor's own life or personal safety from either the vehicle or its occupants.

While Officer Taylor's bullets were striking and passing through the moving motor vehicle, Carvalho and DaRosa opened the rear doors and jumped out to avoid being killed or seriously injured by the gunfire. One of the bullets passed through both the motor vehicle and Barros-Cepeda's body. She was subsequently pronounced dead at the hospital; the cause of death identified as a gunshot wound to her chest.

## II. STANDARD OF REVIEW

It is proper to dismiss a complaint under Fed.R.Civ.P. 12(b)(6) "only if the plaintiff[s'] factual averments hold out no hope of recovery on any theory adumbrated in [their] complaint." Rodi v. Southern New England School of Law, 389 F.3d 5, 13 (1st Cir. 2004), quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

The Court's "task is not to decide whether the plaintiff[s] ultimately will prevail but, rather, whether [they are] entitled to undertake discovery in furtherance of the pleaded claim[s]." Id. Further, the Court "must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in plaintiff[s'] favor." Rivera Sanchez v. Autoridad De Energia Electrica, 360 F.Supp.2d 302, 307 (D.P.R. 2005). "The correct standard for assessing the sufficiency of the instant complaint, therefore, is whether, accepting the factual allegations in the complaint as true and construing them in the light most favorable to plaintiff, the complaint shows any set of facts which could entitle plaintiff to relief." McGrath v. MacDonald, 853 F.Supp. 1, 3 (1994), citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1998). Applying this standard to the instant case, the Court must deny the City of Boston's motion to dismiss.

### III. ARGUMENT

#### A. THE PLAINTIFFS' ALLEGATIONS IN COUNT IV OF THE COMPLAINT ARE SUFFICIENT TO MAINTAIN THEIR § 1983 CLAIM AGAINST THE CITY OF BOSTON

In Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), the Supreme Court held for the first time that municipalities could be sued under 42 U.S.C. § 1983. "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. A municipality, however, can be held liable under § 1983 if an official policy or custom of the municipality "is responsible for a deprivation of rights protected by the Constitution." Id. at 690-691. "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." Id. at 690. A municipality is also

3

liable for an unconstitutional municipal custom if it is "so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet [do] nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989). "Unlike a 'policy,' which comes into existence because of the top-down affirmative decision of a policymaker, a custom develops from the bottom-up." Britton v. Maloney, 901 F.Supp. 444, 450 (D. Mass. 1995). As such, "the liability of the municipality for customary constitutional violations derives not from its creation of the custom, but from its tolerance of or acquiescence in it." Id. A municipality may also be liable under § 1983 "when 1) there is a constitutional violation by a municipal employee and 2) that violation can be said to have been caused by a lack of proper training." Id., citing Collins v. City of Harker Heights, 503 U.S. 115, 122-125 (1992). Under this theory of liability, the municipality's failure to properly train its employees must evidence a "deliberate indifference" to the constitutional rights of its citizens. Canton v. Harris, 489 U.S. 378, 389 (1989).

The plaintiffs in the instant case allege in their complaint the following violations of their constitutional rights by the City of Boston: 1) the City of Boston maintained policies or customs that permitted its police officers to unlawfully, unreasonably, and unjustifiably stop moving vehicles by shooting at them and the occupants inside them; 2) the City of Boston inadequately supervised and trained its police officers and did not require appropriate in-service training or re-training of police officers known to have engaged in police misconduct; and 3) the City of Boston failed to discipline Officer Taylor or order him to receive additional training in the discharge of firearms as a result

4

of his violation of the plaintiffs' constitutional rights. The plaintiffs further allege that shortly after the fatal shooting of Barros-Cepeda, Boston Police Commissioner Paul Evans announced a change in the policy of the Boston Police Department regarding the discharge of firearms at moving vehicles.

The City of Boston contends that the plaintiffs have not provided any factual support for their allegations of an actionable policy or custom. [Def. City of Boston's Memo. at pp. 4, 7]. "Such detailed factual allegations are, however, not required for a complaint to withstand a motion to dismiss. All that is required is a short and plain statement which gives the City fair notice of plaintiffs' claims, and the grounds therefor." Britton, supra at 451-452. See also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993) (holding that a federal court may not apply a "heightened pleading standard" in civil rights cases alleging municipal liability under 42 U.S.C. § 1983). At this stage of the litigation, the plaintiffs:

> "are not required . . . to provide detailed proof that the City's policies caused specific acts which harmed them. The purpose of the complaint is not to prove that the plaintiffs have a factual basis for their claim. It is to put the defendants on notice as to the nature of their claim, and to permit them to prepare a defense. . . . Indeed, to hold the plaintiffs in a civil rights case to a higher standard would raise even more serious concerns than in the usual case. It would make it virtually impossible for the existence of unconstitutional policies such as those alleged by plaintiffs ever to be proven in court, since the victims of such policies are unlikely to be privy to facts sufficient to connect the policy to specific acts prior to discovery."

Britton, supra at 452. Moreover, the plaintiffs in the instant case "have not simply imagined that there might be systematically flawed polices and customs behind the incidents of which they complain." Id. The fact that the Boston Police Department changed its policy regarding the shooting of moving vehicles shortly after the fatal

shooting of Barros-Cepeda suggests that the plaintiffs' allegation that the previous policies and customs of the City of Boston demonstrated a deliberate indifference to the constitutional rights of persons within the City is "more than [a] speculative fantas[y]." Id.

That the plaintiffs have not alleged other instances in which a Boston police officer shot at a moving vehicle in violation of the occupants' constitutional rights does not warrant dismissal of their complaint. Although an actionable custom must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice," Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989), a plaintiff "clear[s] the motion to dismiss hurdle by alleging, inter alia, that a municipal policy might reasonably be inferred from facts setting forth a single incident of police misconduct." McGrath v. MacDonald, 853 F.Supp. 1, 5 n.10 (1994).

The City of Boston also argues that the plaintiffs have not provided any factual support for their allegations concerning the City's failure to properly train police officers in their constitutional obligations to the public. [Def. City of Boston's Memo. at pp. 5-7]. Again, this contention is misplaced. Although the plaintiffs bear the ultimate burden of proving that the City's failure to train evidenced a deliberate indifference to the constitutional rights of persons within the City, they need not meet this burden to defeat a motion to dismiss. See Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (on motion to dismiss, issue is not whether

6

plaintiff will prevail, but whether, construing complaint liberally, plaintiff should be entitled to offer evidence in support of his claims).

The City of Boston's attempt to analogize this case to Tennessee v. Garner, 471 U.S. 1 (1985) and Landol-Rivera v. Cruz Cosme et al., 906 F.2d 791 (1st Cir. 1990) is misguided. [Def. City of Boston's Memo. at p. 5]. In Tennessee v. Garner, supra at 11, the Supreme Court held that "[w]here the officer has probable cause to believe that [a fleeing] suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." In Landol-Rivera v. Cruz Cosme et al., supra at 795, the First Circuit ruled that "[a] police officer's deliberate decision to shoot at a car containing a robber and a hostage for the purpose of stopping the robber's flight does not result in the sort of willful detention of the hostage that the Fourth Amendment was designed to govern." The instant case is inapposite. Officer Taylor did not have probable cause to believe that the motor vehicle in question here contained a fleeing suspect. He had no knowledge of and did not observe anything that would lead to him believe that anyone in the vehicle had been or was presently involved in any criminal wrongdoing. [Pls.' Comp. ¶ 15]. The City of Boston's allegations that the driver of the motor vehicle failed to stop for a red light and subsequently struck a uniformed police officer are irrelevant to the resolution of its motion. [Def. City of Boston's Memo. at p. 1]. In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must limit its focus to the facts alleged in the complaint. Rivera Sanchez v. Autoridad De Energia Electrica, 360 F.Supp.2d 302, 309 (D.P.R. 2005). Even if this Court were to consider the allegations introduced in the City

7

of Boston's memorandum of law in support of its motion to dismiss, these allegations do not prove that Officer Taylor knew that the other police officer on the scene had been struck by the motor vehicle, or that the driver of the vehicle had failed to stop for a red light. Thus, the City of Boston's contention that Officer Taylor's actions did not constitute a constitutional violation is not supported by the facts alleged in the complaint.

### B. THE PLAINTIFFS' ALLEGATIONS IN COUNTS IX, X, XI, XIV, AND XV OF THE COMPLAINT ARE SUFFICIENT TO MAINTAIN THEIR STATE LAW CLAIMS AGAINST THE CITY OF BOSTON

The City of Boston maintains that the plaintiffs' claims under the Massachusetts Tort Claims Act must also be dismissed for failure to state a claim upon which relief can be granted. Specifically, the City contends that it is immune from liability pursuant to two sections of the Act: M.G.L. c. 258, §§ 10(b) and 10(j)(3). The City's argument must fail.

The Massachusetts Tort Claims Act provides that "[p]ublic employers shall be liable for injury . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." M.G.L. c. 258, § 2. A public employer is exempt from liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." M.G.L. c. 258, § 10(b). To determine whether this so-called "discretionary function exception" applies, the Court must decide 1) "whether the governmental actor had any discretion at all as to what course of conduct to follow," and, if so, 2) "whether the discretion that the actor had is

8

that kind of discretion for which Section 10 (b) provides immunity from liability" (i.e., discretion "represent[ing] planning and policymaking"). Harry Stoller & Co. v. City of Lowell, 412 Mass. 139, 141-142 (1992). The City of Boston contends that Officer Taylor's decision to discharge his firearm at the moving motor vehicle was discretionary and was made pursuant to his policy-making authority. [Def. City of Boston's Memo. at p. 10-11]. According to the City, Officer Taylor "was required 'to determine when, where, and to what extent' he should stop a moving vehicle from further endangering public safety." [Def. City of Boston's Memo. at p. 10-11, quoting Desjardins v. Commonwealth, 57 Mass. App. Ct. (2003), 2003 WL 124530 at **2]. Officer Taylor's firing at the vehicle and its occupants, however, was in direct violation of the then-existing policies of the City of Boston police department on the use of deadly force.[1] Even if this Court concludes that the shooting constituted a discretionary decision, it cannot be maintained that this decision involved a policy choice or a governmental planning decision. Rather, Officer Taylor's conduct involved "the carrying out of previously established policies or plans," and was thus "governed by the established standards of tort liability applicable to private individuals or entities." Id. at 142.

The City of Boston also argues that Counts IX, X, XI, XIV, and XV of the plaintiffs' complaint must be dismissed pursuant to M.G.L. c. 258, § 10(j). Section 10(j)

---

[1] At the time of the incidents alleged in the complaint, Section 8 of Rule 303 of the Boston Police Rules and Regulations provided that "[f]irearms shall not be discharged at or from a moving vehicle unless the officer is being threatened with deadly force by an occupant of the target vehicle." [See attached Exhibit A]. There was no threat to Officer Taylor's life or safety from either the vehicle or its occupants. Although not appended to the complaint, the Boston Police Rules and Regulations are properly before this Court for consideration because they were referenced in the complaint. See Pls.' Comp. ¶¶ 12, 35; Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (D. Mass. 1998) ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

of the Massachusetts Tort Claims Act provides that a public employer is immune from suit for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." M.G.L. c. 258, § 10(j). Thus, the City of Boston "is immune from suit . . . for all harmful consequences arising from its failure to act to prevent the violent or tortious conduct of a third person, unless it 'originally caused' the 'condition or situation' that resulted in the harmful consequence." Kent v. Commonwealth, 437 Mass. 312, 317 (2002).

The City contends that it was not the "original cause" of the condition that led to the plaintiffs' injuries; rather, it was the operator of the motor vehicle who created the situation that resulted in harm to the plaintiffs. [Def. City of Boston's Memo. at p. 13-14]. The argument is without merit. Officer Taylor's decision to fire at a moving motor vehicle and its occupants was "an affirmative act" that "materially contributed to creating the specific 'condition or situation' that resulted in the harm." Id. at 318, 319. Indeed, accepting the facts alleged in the complaint as true and construing them in the light most favorable to the plaintiffs, a jury could find that Officer Taylor began shooting at the motor vehicle and its occupants without any justifiable reason and that his actions were the direct and proximate cause of the plaintiffs' harm.

The City's reliance on Brum v. Town of Dartmouth, 428 Mass. 684 (1999) is misplaced. In that case, a high school student was fatally stabbed on public school property by three armed assailants, at least one of whom was not a student at the school.

Id. at 686. The student's mother brought suit against the municipality and others alleging, among other things, "that the defendants' negligent failure to maintain adequate security measures at the school and specific failure to protect her son in the presence of a known threat resulted in [her son's] death." Id. at 687. In concluding that the municipality was immune from liability, the Supreme Judicial Court construed the statute to preclude liability for "an act or failure to act to prevent or diminish" certain "harmful consequences," including "the violent or tortious conduct of a third person." Id. at 692. Here, in contrast, the plaintiffs do not allege that Officer Taylor failed to act. To the contrary, they allege that Officer Taylor did act and that those actions constituted the "original cause" of the circumstances leading to the plaintiffs' harm.

Finally, the City of Boston maintains that Counts X and XV of the complaint are barred by the "discretionary function exception" to the Massachusetts Tort Claims Act and § 10(j) of the Act. [Def. City of Boston's Memo. at p. 14-15]. Count X arises under M.G.L. c. 229, § 2 (the "wrongful death" statute) and thus is not subject to the exceptions to municipal liability defined in the Massachusetts Tort Claims Act. Count XV alleges that the City of Boston was negligent in investigating complaints of police misconduct and, by incorporation by reference, in failing to discipline Officer Taylor for the fatal shooting of Barros-Cepeda. [Pls.' Comp. ¶¶ 82, 35]. The Supreme Judicial Court has previously held that State police officials were not immune from liability under the "discretionary function exception" to the Act for failing to implement existing disciplinary policies as to a particular State trooper. Dobos v. Driscoll, 404 Mass. 634, 652-653 (1989).

Count XV further alleges that the City of Boston negligently trained and supervised its police officers. [Pls.' Comp. ¶ 83]. The City's argument that it is immune from liability on this claim under the "discretionary function exception" to the Act is unpersuasive. As discussed previously, "[i]n deciding whether a plaintiff's action is foreclosed by the discretionary function exception, the court conducts a two-part inquiry." Rochleau v. Town of Millbury, 115 F.Supp.2d 173, 179 (D. Mass. 2000). The Court "determines first whether the governmental actor had any discretion at all as to what course of conduct to follow and second whether the discretion that actor had is the kind for which § 10(b) provides immunity." Id. at 179-180.

The City cites Crete v. City of Lowell, 418 F.3d 54 (1st Cir. 2005) to support its position. There, the First Circuit held that the discretion exercised by the municipality in hiring a particular police officer was grounded in policy and was therefore immune from tort liability. Id. at 62. The plaintiff in that case, however, never challenged the hiring policy itself, only the municipality's decision to hire the police officer pursuant to policies deemed lawful by the court. Here, the plaintiffs have alleged that the training program itself was inadequate, thus making the two cases inapposite. Nor is the plaintiffs' negligent training claim barred by § 10(j) of the Massachusetts Tort Claims Act. The City's reliance on Ward v. City of Boston, 367 F.Supp.2d 7, 16 (D. Mass. 2005) is misplaced. There, the court rejected the plaintiff's argument that the City's placement of two inexperienced officers together for the same shift constituted the "original cause" of the plaintiff's injuries. Id. Thus, the crux of the plaintiff's argument was "that the City failed to act properly in assigning officers." Id. Here, the plaintiffs are

alleging that the City's affirmative action (i.e., its training program) was the "original cause" of the circumstances that led to the plaintiffs' injuries. Consequently, the Court must deny the City's motion to dismiss Count XV of the complaint.

IV.   CONCLUSION

For the reasons stated above, the plaintiffs respectfully request that the City of Boston's motion to dismiss all counts against it be denied.

Respectfully submitted,

For the plaintiff SHENIA DANCY-STEWART, as Administratrix of the Estate of EVELINE BARROS-CEPEDA,

_____
Andrew Stockwell-Alpert
BBO #481190
11 Beacon Street -- Suite 1210
Boston, MA 02108
(617) 720-4244

For the plaintiffs LUIS CARVALHO and MARIA DaROSA,

_____
Manuel R. Pires
BBO #563967
DeMiranda & Pires, L.L.C.
1212 Hancock Street
Quincy, MA 02169
(617) 479-8222

13

## CERTIFICATE OF SERVICE

I, Andrew Stockwell-Alpert, hereby certify that on _____, 2005, I served <u>The Plaintiffs' Opposition to the Defendant City of Boston's Motion to Dismiss and Accompanying Memorandum of Law in Support Thereof</u> by mailing a copy, postage prepaid, to the following:

Kate Cook
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201

12/5/05
Date

Andrew Stockwell-Alpert

**Boston Police Department**  **Rules and Procedures**

**RULE 303**

upon the victim, or (2) that there is substantial risk that the felon in question will cause death or great bodily injury if their apprehension is delayed, or

C. There is no less drastic means available to kill a dangerous animal or one so badly injured that humanity requires its removal from further suffering.

Officers who find it necessary, under the provisions of this rule, to discharge firearms shall exercise due care for the safety of persons and property in the area and shall fire only when reasonably certain that there is no substantial risk to bystanders.

**Sec. 7 Warning Shots and Signals:** Firearms shall not be used as a signaling device. A deadly weapon shall not be used to summon assistance or to give signals or to warn a fleeing felon to stop. This does not mean that officers may not discharge their firearm without the intent to kill or disable if in their best judgment there is no alternate method of convincing a would-be attacker that they are ready and able to defend themselves or others if the potential threat is not discontinued.

**Sec. 8 Moving Vehicles:** Firearms shall not be discharged at or from a moving vehicle unless the officer is being threatened with deadly force by an occupant of the target vehicle. **This prohibition exists for two reasons:**

A. **the probability that bullets might ricochet and cause injury to innocent persons;**

B. **the probability of the vehicle crashing and causing injury to innocent persons if the bullets do not ricochet but disable the operator.**

**Sec. 9 Permissible Weapons and Ammunition:** Officers shall carry on duty only weapons and ammunition authorized by the Department. Whenever an officer is carrying a currently issued Glock semi-automatic pistol, the pistol shall be carried with one round in the chamber and 14 rounds in the magazine. Spare magazines shall be loaded with 14 rounds each. However, other weapons as are authorized by the Department for special operations may be selectively issued or authorized by a Superior Officer if they are deemed necessary to ensure the safety and effectiveness of police operations. Officers armed with such weapons shall use those weapons in accordance with the provisions of this rule as well as any additional guidelines issued at the time.

It is the responsibility of a police officer not to accept a weapon unless the officer has qualified in its use. Prior to issue, the issuing Superior Officer shall inquire of any officer to whom a weapon is to be issued whether or not that officer is qualified in its use.

All necessary repairs or modifications to Department issued firearms and other weapons must be performed by a Department armorer or a Department approved gunsmith at the direction of the Commanding Officer of the Boston Police Range.

**Sec. 10 Reporting Firearms Discharges:** All firearm discharges, except discharges which occur during Department authorized or approved firearms training, while lawfully engaged in target practice or while hunting (unless a discharge occurring during one of

Page 4