UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11803-MLW

SHENIA DANCY-STEWART as
Administratrix of the Estate of EVELINE
BARROS-CEPEDA,
**Plaintiff**,

v.

THOMAS TAYLOR, Jr., and the CITY OF
BOSTON,
**Defendants**

### DEFENDANTS THOMAS TAYLOR, JR. AND THE CITY OF BOSTON'S REPORT REGARDING THE PROSPECTS OF SETTLEMENT, THE DEFENDANTS' BASES FOR FILING MOTIONS FOR SUMMARY JUDGMENT AND CASE STATUS

Pursuant to this Court's August 28, 2006 Scheduling Order, the Defendants, Boston Police Officer Thomas Taylor, Jr. and the City of Boston ("the Defendants"), hereby respectfully submit this report regarding the prospects for settlement and the case status and the proper bases for the Defendants' viable summary judgment motions.

I.   **Prospects for Settlement and Case Status**

The parties have not reached any agreement with respect to settlement in this case. The Defendants have been actively engaged in discovery and several depositions remain outstanding. The Defendants have provided the Plaintiff with a voluminous document production, exchanged other written discovery requests and conducted numerous depositions. The parties have also jointly filed a Motion to Extend Discovery and Other Deadlines, dated October 3, 2007, but there has been no decision on this motion. Additionally, the Defendants have filed a motion seeking leave to depose a critical eyewitness to the incident, Brima Wurie,

who is currently incarcerated. Additionally, the Defendant has filed a motion seeking criminal record offender information on several key percipient witnesses. The Plaintiff has indicated that he will not oppose these motions. As of today's date, no decision on these motions have been rendered.

At this time, the Defendants request that the Scheduling Order be amended and the discovery period be extended. Even a brief extension will be sufficient to enable the Defendants to complete critical discovery. While the Defendants have scheduled numerous depositions of witnesses (approximately ten deponents), to date, few have complied with their subpoenas. Other scheduled deponents have failed to appear, despite their proper service on several occasions. In fact, the Defendants have re-noticed several percipient eyewitness depositions at least twice without any deponent appearance. A brief extension will allow the Defendants to obtain the depositions of these recalcitrant witnesses and if necessary, file a Motion to Compel their attendance.

### II.   Defendants' Bases for Summary Judgment

In her Amended Complaint, the Plaintiff alleges various claims, including the following: Count I: Wrongful Death under 42 U.S.C. § 1983 (brought by Plaintiff Dancy-Stewart" against Officer Taylor); Count II: Survival Action under 42 U.S.C. § 1983 (brought by Plaintiff Dancy-Stewart against Officer Taylor); Count III: Unreasonable Seizure under 42 U.S.C. § 1983 (brought by Plaintiffs DeRosa and Carvalho); Count IV: Municipal Liability Under 42 U.S.C. § 1983 (brought by Plaintiff Dancy-Stewart against the City of Boston); Count V: Wrongful Death under G. L. c. 229 (brought by Plaintiff Dancy-Stewart against Officer Taylor); Count VI: Survival Action (brought by Plaintiff Dancy-Stewart against the City of Boston); Count VII: Survival Action (brought by Plaintiff Dancy-Stewart against Officer Taylor); Count VIII: Gross

Negligence (brought by Plaintiffs Carlvalho and DeRosa against Officer Taylor); Count IX: Negligence (brought by Plaintiffs Carlvalho and DeRosa against the City of Boston); and Count X: Infliction of Emotional Distress (brought by Plaintiffs DeRosa and Carvalho against Officer Taylor).

Given that Plaintiffs Maria DeRosa and Luis Carlvalho have voluntarily dismissed their claims, Counts III and Counts VIII-X are no longer viable and only Plaintiff Dancy-Stewart remains in this lawsuit. For summary judgment purposes, only six claims remain: Counts I, II, IV, V, VI, and VII. The Defendants assert that summary judgment is warranted on each of these claims for the following reasons.[1]

A.   **Count I:   42 U.S.C. § 1983**

**1. No Evidence of The Decedent's "Seizure" Has Been Adduced.**

The Plaintiff has no reasonable expectation of proving the requisite elements of Count I. In Count I, the Plaintiff Dancy-Stewart alleges that Officer Taylor's actions in shooting at the moving vehicle unreasonably seized the passenger decedent, Eveline Barros-Cepeda ("decedent"), in violation of her rights under the Fourth Amendment. The Plaintiff, however, has no reasonable expectation of proving this Fourth Amendment claim because the evidence will incontrovertibly establish that the decedent was not "seized" within the meaning of the Fourth Amendment.

It is undisputed that at the time of the incident, during the early morning hours of September 8, 2002, the decedent was a passenger in a vehicle driven by Brima Wurie. It is also undisputed that this vehicle, traveling in Dorchester, MA, evaded Boston Police Officers Robert Connolly and Deborah Flaherty who had directed the vehicle to stop after violating the traffic laws. Officers Flaherty and Connolly pursued the vehicle in a marked cruiser, with lights and

---

[1] The Defendants provide a brief synopsis of their summary judgment arguments and reserve the right to expand on

sirens activated, but the Wurie vehicle accelerated and failed to heed the orders of Officers Flaherty and Connolly.

When Officer Michael Paillant then observed the Wurie vehicle and the Boston Police cruiser following in pursuit, he attempted to halt the Wurie vehicle by standing in the roadway and directing Wurie to stop. Mr. Wurie slowed his vehicle, but then suddenly accelerated, thereby striking Officer Paillant and causing him to fall onto the hood of his vehicle and then to underneath the vehicle. When Officer Taylor, from a distance, observed the Wurie vehicle striking Officer Paillant, Officer Taylor made every effort to prevent Wurie from causing further injury to Officer Paillant and others by discharging his firearm. At no point did Officer Taylor observe any individuals in the vehicle other than Wurie. Moreover, the evidence will establish that at the time Wurie struck Officer Paillant, the passengers in the Wurie vehicle, including the decedent, placed their heads down to remain out of sight.

The Fourth Amendment is inapplicable to the Plaintiff's claim. As the First Circuit has admonished, it is an erroneous conclusion that " 'a law enforcement officer "seizes" someone by shooting him.' " See Landol-Rivera v. Cruz, 906 F.2d 791 (1st. Cir. 2000); see also Tennesee v. Garner, 471 U.S. 1 (1985); Landol-Rivera v. Cruz Cosme et al, 906 F.2d 791 (1st Cir. 1990) (an officer shooting at a moving vehicle does not constitute a constitutional violation per se). Moreover, an individual can only assert a viable Fourth Amendment claim of unreasonable seizure when that individual is the specific target of the police conduct at issue. See Landol-Rivera v. Cruz-Cosme, 906 F.2d 791, 797 (1st Cir. 1990). The First Circuit has held further that a seizure under the Fourth Amendment occurs only when there has been an intentional attempt to gain control over the person who suffered the harm. Id. at 795.

---

these arguments and their analysis in their memoranda of law should this Court allow their motions for summary judgment to be filed.

4

On this point, the First Circuit's decision in <u>Landol-Rivera v. Cruz-Cosme</u> is particularly instructive. In <u>Landol</u>, the plaintiff had been taken hostage by a suspect in a fleeing moving vehicle when he was accidentally struck by a bullet fired by the police officers who gave chase. <u>Id</u>. at 792. In dismissing the plaintiff's Fourth Amendment claim, the First Circuit recognized that the police officer's deliberate act of shooting at the fleeing vehicle was done for the purposes of gaining control over the felon, not the plaintiff and the plaintiff, therefore, was not the intended target of the shooting. <u>Id</u>. In the First Circuit's view, "an intentional acquisition of physical control," is required for Fourth Amendment seizure purposes, and the plaintiff had not satisfied this requirement. <u>Id</u>. at 795 <u>citing</u> <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596 (1989).

Similarly, in this case, the Plaintiff has not met her burden. It is undisputed that when Officer Taylor discharged his weapon, he was not attempting to restrain the decedent's freedom, but was attempting only to apprehend Wurie, the driver, and prevent further injury to Officer Paillant and to others. Accordingly, the Plaintiff cannot establish that Officer Taylor's firearm discharge constituted "an intentional acquisition of physical control" of the decedent within the meaning of the Fourth Amendment.

**2. Officer Taylor's Conduct Was Objectively Reasonable.**

Even if the Plaintiff establishes that the decedent was seized, Officer Taylor is entitled to summary judgment because the Plaintiff has no reasonable expectation of proving that Officer Taylor's conduct was unreasonable. The "reasonableness" of Taylor's use of deadly force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1985). The reasonableness determination requires an objective analysis as the Court must consider whether Taylor's actions were "objectively reasonable" in light of the facts and circumstances confronting him,

without regard to his underlying intent or motivation. See id. at 397. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97.

The First Circuit has interpreted Graham "to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases." Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994); accord Medeiros v. Dracut, 21 F.Supp.2d 82, 86 (D. Mass.1998) (noting that "[b]oth the Supreme Court and the First Circuit have afforded a comparatively generous standard of reasonableness to the police in cases where potential danger, emergency conditions, or other exigent circumstances are present."). The First Circuit does not engage in "second-guessing" officers, even if, in retrospect, a situation could have been handled differently. See Roy, 42 F.3d at 695.

Against this factual and legal landscape, Defendant Taylor can establish that the Plaintiff has no reasonable expectation of proving that his use of force was objectively unreasonable. It is undisputed that when Officer Taylor observed the Wurie vehicle strike Officer Paillant, he was faced with exigent circumstances involving grave serious injury to Officer Paillant and possibly to others. In a split-second decision, Officer Taylor discharged his firearm to prevent further injury, likely saving the life of Officer Paillant. Under such circumstances, his conduct was not unconstitutional. See St. Hilaire, 885 F.Supp. 349, 353 (D.N.H.), aff'd 71 F.3d 20 (1st Cir.1995) (holding that police officer who shot suspect in his car after he saw the suspect's shoulder move was not unconstitutional).

**2. Officer Taylor Is Also Entitled To Qualified Immunity.**

As an alternative basis for summary judgment, Defendant Taylor will also assert that the

doctrine of qualified immunity also entitles him to summary judgment. An objectively reasonable officer in Officer Taylor's position would not have known that firing his weapon at Wurie would be an unconstitutional application of force. Moreover, at the time of the incident, no pre-existing law provided fair warning that shooting at Wurie would violate federal law.

### B.    Count IV

The Plaintiff also lacks any reasonable expectation of proving an actionable municipal claim against the Defendant, City of Boston. Liability against the City of Boston is governed by the Supreme Court's seminal decision in Monell v. Department of Social Services, 436 U.S. 658 (1978), which held that a claim against a municipality could be actionable only in cases when its agents and employees committed constitutional violations, but not under a theory of respondeat superior. Id. at 691-95. "The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto respondeat superior, has set a very high bar for assessing municipal liability under Monell." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005).

As discussed supra, the Plaintiff cannot establish that Officer Taylor committed any constitutional violation. Accordingly, on this basis alone, the Defendant City of Boston is entitled to summary judgment.

Summary judgment is also warranted because the Plaintiff has failed to adduce evidence establishing that "[t]he alleged municipal action at issue . . . constitute[s] a 'policy or custom' attributable to the City." Young, supra at 26, citing Silva v. Worden, 130 F.3d 26, 31-32 (1st Cir. 1997). Not only has the Plaintiff failed to satisfy this requirement, but she also has failed to establish "1) that the municipal policy or custom actually have caused the [decedent's] injury, and 2) that the municipality possessed the requisite level of fault, which is generally labeled in

7

these sorts of cases as 'deliberate indifference.'" Id., citing County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997); see also Bordanaro v. McLeod, 871 F.2d 1151, 1161-63 (1st Cir. 1989).

It is simply insufficient for the Plaintiff to generally and summarily allege without any factual support that the City of Boston maintained policies or customs that exhibited deliberate indifference to individuals' constitutional rights. Equally insufficient is the Plaintiff's allegation that it was the policy and/or custom of the City of Boston "to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the City, including but not limited to the unlawful, unreasonable and unjustified stopping of moving vehicles by shooting at them and the people inside them." Here, the Plaintiff's contention amounts to a bald assertion that the City conducted inadequate investigations generally and including incidents involving shootings and moving vehicles. The Plaintiff, fails, however, to adduce a single admissible fact substantiating this assertion or demonstrating the unconstitutionality of other shooting incidents. Moreover, as discussed supra, the Plaintiff cannot even establish a constitutional violation in Taylor's alleged conduct.

As for any theory of a policy based on a failure to train or supervise, the Plaintiff's claim also fails. The Plaintiff's claim regarding police officer training lacks mention of any particular deficiencies with regard to Officer Taylor's training and no evidence has been adduced through discovery to support such a contention. Furthermore, the Plaintiff's claim does not even allege that the City, as a matter of policy, chose to train its police officers with a deliberate indifference to the rights of its citizens and that the decedent was injured as a result. Overall, "a training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a Plaintiff would prefer is insufficient to

make such a showing." Young, supra at 27.

Not only has the Plaintiff failed to identify and adduce evidence of an actionable municipal policy or custom, but they have also failed to sufficiently allege that the municipality subjected them or caused them to be subjected to a constitutional deprivation. See St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988). That is, the Plaintiff "must also demonstrate that, through its *deliberate* conduct the municipality was the *moving force* behind the injury alleged." Bd. of the County Com'rs. v. Brown, 520 U.S. 397, 404 (1997). The Plaintiff has no reasonable expectation of establishing that the municipal action was taken with the requisite degree of culpability and that a direct causal link exists between the municipal action and the alleged deprivation of the decedent's federal rights. Id. Accordingly, summary judgment is warranted.

C.    **Count V**

The Plaintiff also has no reasonable expectation of proving his wrongful death claim under G.L. c. 229 because it is barred under the Massachusetts Tort Claims Act ("MTCA"). Count V alleges that Officer Taylor violated G. L. c. 229, § 2, the Massachusetts Wrongful Death Statute. That statute provides "that a person who by negligence causes the death of a person, or by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted..." G. L. c. 229 § 2. The summary judgment record establishes that the Plaintiff's claim fails because the Plaintiff has failed to adduce any evidence of any negligent, willful, wanton or reckless conduct by Officer Taylor. As discussed supra, the undisputed evidence will establish that Officer Taylor acted reasonably at all times given the exigent circumstances with which he was faced.

Moreover, summary judgment is warranted because Officer Taylor is immune under G.

L. 258, the "Massachusetts Tort Claims Act" ("Tort Claims Act"). Section 2 of the Act specifically immunizes a public employee from negligence claims by stating that the "[p]ublic employer shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of ... employment..." The Act, therefore, establishes that Officer Taylor, a public employee, is immune from liability for all negligent acts occurring within the scope of his employment. See Alex v. Boston Water & Sewer Comm'n., 45 Mass. App. Ct. 914 (1998). Accordingly, he is entitled to summary judgment.

### D. Counts II, VI, and VII

As for Counts II, VI, and VII, Defendants contend that they are entitled to summary judgment because the Plaintiff has no reasonable expectation of proving these claims. While the Plaintiff captions each of these claims as a "Survival Action," they are not actionable because they exist primarily as a claim for the decedent's alleged pain and suffering. A claim for pain and suffering is a species of damages, rather than an additional theory of liability and does not in of itself entitle them to relief. Cf. Acevedo-Garcia v. Monroig 351 F.3d 547, 571 -572 (1st Cir. 2003). Moreover, the Plaintiff has adduced no discovery to support his aforementioned theories of liability no these survival claims on behalf of the decedent.

WHEREFORE, the Defendants respectfully submit their status report and request that this Honorable Court allow their request to file motions for summary judgment.

[signature next page]

Respectfully submitted,

DEFENDANTS,
CITY OF BOSTON, AND
THOMAS TAYLOR, JR.

By their attorneys:

/s/ Helen G. Litsas

_____

Helen G. Litsas #644848
Special Assistant Corporation Counsel
Hollett Building
38 Main Street
Saugus, MA 01906
(781) 231-8090

Evan C. Ouellette, BBO # 655934
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201

Date: 12/14/07

### CERTIFICATE OF SERVICE

I, Helen G. Litsas, hereby certify that on this date I served a copy of the foregoing documents upon lead plaintiff's counsel, Andrew Stockwell-Alpert, by electronic filing and by postage prepaid, first class, U.S. Mail.

| 12/14/07 | /s/ Helen G. Litsas |
|---|---|
| **Date** | **Helen G. Litsas** |