# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 05-11803-MLW**

---

**SHENIA DANCY-STEWART as
Administratrix of the Estate of
EVELINE BARROS-CEPEDA,**
      **Plaintiff,**

**v.**

**THOMAS TAYLOR, Jr., and the
CITY OF BOSTON,**
      **Defendants.**

---

## DFENDANTS, CITY OF BOSTON AND THOMAS TAYLOR'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR CLARIFICATION

The Defendants, City of Boston and Thomas Taylor, Jr., hereby oppose Plaintiff's Emergency Motion for Clarification and their request to conduct further written discovery outside the scope of this Court's December 20, 2007 Order. As grounds for their opposition, the Defendants state as follows:

1.      The Plaintiff served the Defendants with interrogatory requests and requests for production of documents on December 27, 2007, well past the November 30, 2007 discovery deadline.

2.      Just six days prior to her service, on December 19, 2007, this Court had held a status conference to discuss the remaining discovery in this case.

3.      As of the date of that status conference, the Plaintiff had not noticed any depositions, served any interrogatories on any party, or requested the production of any documents beyond Defendants' Rule 26.1 auto-disclosures.

4.      Moreover, during the status conference, Plaintiff made no mention of her intent to serve written discovery on the Defendants. <u>See</u> Exhibit A, Transcript of the December 19, 2007 Status Conference.[1]

---

[1] The Defendants hereby attach the transcript of the December 20, 2007 status conference as the Plaintiff failed to request this transcript and include it with her Emergency Motion for Clarification.

5.      In fact, the only written discovery discussed during the conference was the requests the <u>Defendants</u> served upon the Plaintiff prior to the expiration of the discovery period.[2]

6.      Following this status conference, this Court issued an order on December 20, 2007 addressing the schedule for remaining discovery.

7.      Nowhere in that Order does the Court permit the Plaintiff to serve written discovery upon the Defendants.

8.      Given the developments of the status conference and the subsequent December 20, 2007 Order, the Defendants contend that Plaintiff's request for written discovery from the Defendants is impermissible.

9.      The Defendants also oppose Plaintiff's contention that its discovery requests can be easily produced. Plaintiff's written discovery requests are not only objectionable but also include irrelevant, burdensome and voluminous document production, including the complete investigatory files of nineteen (19) prior shooting incidents involving the Boston Police Department that span the course of multiple decades. Moreover, any interrogatory requests of Defendant Thomas Taylor are irrelevant in light of his upcoming deposition scheduled for January 30, 2008.

For all of the foregoing reasons, the Defendants respectfully request that the Defendants deny Plaintiff's Emergency Motion for Clarification and their request to conduct further written discovery.

[signature next page]

---

[2]  The Plaintiff disingenuously states in her Emergency Motion for Clarification that she was required to produce the discovery responses within a two week period when in fact, she ultimately received a two week extension from the Court. The Defendants served discovery requests upon the Plaintiff on November 24, 2007, thereby requiring the Plaintiff's response by December 24, 2007. With the Court's Order, Plaintiff was given additional time and was permitted to produce them by January 3, 2008.

Respectfully submitted,
DEFENDANTS, CITY OF BOSTON
AND THOMAS TAYLOR

By their attorneys:

/s/ Helen G. Litsas

_____
Helen G. Litsas, Esq. BBO# 644848
Special Assistant Corporation Counsel
Law Office of Helen G. Litsas
Hollett Building
38 Main Street
Saugus, MA 01906


Evan Ouellette, Esq.
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4048


## CERTIFICATE OF SERVICE

I, Helen G. Litsas, hereby certify that on this date I served a copy of the foregoing document upon the Plaintiff via her counsel, Andrew Stockwell-Alpert, Esq., by electronic filing and first class mail.

1/16/08                              /s/ Helen G. Litsas
Date                                 Helen G. Litsas

1              UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS

3                          No. 1:05-cv-11803-MLW

4

5

   SHENIA DANCY-STEWART, et al,
6              Plaintiffs

7

   vs.
8

9

   THOMAS TAYLOR, JR., et al,
10             Defendants

11

12                    * * * * * * * *

13

14                 For Hearing Before:
                 Chief Judge Mark L. Wolf
15

16                  Lobby Conference

17

                 United States District Court
18               District of Massachusetts (Boston)
                 One Courthouse Way
19               Boston, Massachusetts 02210
                 December 19, 2007
20

21                    * * * * * * *

22

             REPORTER: RICHARD H. ROMANOW, RPR
23                Official Court Reporter
                 United States District Court
24       One Courthouse Way, Room 5200, Boston, MA 02210
                     (617) 737-0370
25

```
 1                    A P P E A R A N C E S

 2

 3    ANDREW STOCKWELL-ALPERT, ESQ.
         Law Office of Andrew Stockwell-Alpert
 4       11 Beacon Street
         Suite 1210
 5       Boston, Massachusetts 02108
         (617) 720-4244
 6   and
      WILLIAM KEEFE, ESQ.
 7       Law Office of William Keefe
         390 Centre Street
 8       Jamaica Plain, Massachusetts 02130
         (617) 983-9200
 9       Email: Wkeefelaw@yahoo.com
      and
10    JAMES McCAULL, ESQ.
      ADELIO DeMIRANDA, ESQ.
11       For the Administratrix and individual plaintiffs

12    HELEN G. LITSAS, ESQ.
         Law Office of Helen G. Litsas
13       Hollett Building
         38 Main Street
14       Boston, Massachusetts 01906
         (781) 231-8090
15       Email: Helen@litsaslaw.com
      and
16    EVAN C. OUELLETTE, ESQ.
         City of Boston Law Department
17       Boston City Hall
         One City Hall Plaza, Room 615
18       Boston, Massachusetts 02201
         (617) 635-4048
19       Email: Evan.ouellette@cityofboston.gov
         For Defendants
20

21

22

23

24

25
```

```
1                  P R O C E E D I N G S
2              (Lobby, 1:00 p.m.)
3              THE COURT:  All right.  Why don't you tell me
4      or remind me who you are and who you represent.
5              MR. STOCKWELL-ALPERT:  Good afternoon.  I'm
6      attorney Andrew Stockwell-Alpert and I represent Shenia
7      Dancy-Stewart who is the plaintiff administrator of the
8      estate.
9              MR. McCAULL:  Your Honor, James McCaull.  Same
10     as Mr. Alpert.  My name is not on the complaint.  I
11     don't think I filed an appearance yet, but I will.  I
12     shall.
13             MR. DeMIRANDA:  Adelio DeMiranda, your Honor,
14     and I represent Shenia Dancy-Stewart.
15             THE COURT:  How do you spell your last name?
16             MR. DeMIRANDA:  D-E-M-I-R-A-N-D-A.
17             THE COURT:  Okay.
18             MR. KEEFE:  The same of William Keefe, for the
19     record, for the plaintiff, and along with Mr. Stockwell-
20     Alpert.  I have my appearance in.
21             MS. LITSAS:  Good afternoon, your Honor.  I'm
22     Helen Litsas.  I represent the two defendants in this
23     action, the City of Boston and Thomas Taylor.
24             MR. OUELLETTE:  Evan Ouellette, and my last
25     name is spelled O-U-E-L-L-E-T-T-E, and I also represent
```

1    the two defendants, the City of Boston and Thomas

2    Taylor.

3    THE COURT:  All right.  Well, you've got a lot

4    of lawyers, but you haven't made the progress you told

5    me you were going to make when we had the scheduling

6    conference in August of 2006.  And despite the fact the

7    plaintiffs have got four lawyers, you didn't file the

8    report that was due on December 14th.  So -- from based

9    on what I read, I don't understand why I would extend

10   the schedule nine months and maybe I shouldn't extend it

11   at all, because it looks like some of these depositions

12   you had trouble getting weren't noticed until November

13   and you find out the deponent's in jail.

14   But what's going on?  You know, cases are hard and

15   sometimes things happen, but you've got to work

16   diligently at them.  And, you know, with six lawyers

17   representing three parties, this should be doable.

18   MR. STOCKWELL-ALPERT:  I guess I should speak

19   first, because I'm probably the only one you've had any

20   consistent contact with and I was the one who came in

21   for the scheduling conference.

22   There have been a lot of -- I can say a lot of

23   things, but nothing is really an excuse or a

24   justification.  Um, there has been an awful lot of --

25   We need to start out with the fact that we're not

1    really all six representing the same entity, there are
2    three of us representing one of the beneficiaries and
3    two representing the other, but you can't represent
4    beneficiaries.  There are all six representing the
5    estate.  And the reason that's an issue is --
6              THE COURT:  You mean the four of you.  They
7    represent the defendants.
8              MR. STOCKWELL-ALPERT:  Oh, I'm sorry.  That's
9    right.  There are two others who aren't here.
10             THE COURT:  Oh, there are two others who
11   aren't here?
12             MR. STOCKWELL-ALPERT:  Right.
13             THE COURT:  Where are they?
14             MR. STOCKWELL-ALPERT:  Well, Manuel Pires, his
15   mother died suddenly last Friday after a six-month bout
16   with pancreatic cancer and so he's been taking the week
17   off and the funeral is tomorrow and so he's kind of
18   preoccupied right now.
19        And that's one of the things that has been a
20   problem with me, by the way, is that as I told you way
21   back when, that I'm legally blind, and so when I do a
22   lot of this discovery, I obviously rely on people around
23   me to help me with the reading and sorting things out
24   and doing some of the leg-work.  The communication all
25   around has been somewhat complicated by two factors.

1    There's kind of -- and this is utterly irrelevant

2    to you from the standpoint of moving the case, but

3    there's kind of a split in the beneficiaries with regard

4    to what they consider to be the value of each of their

5    cases and how they're going to be best represented.  And

6    so as a result, although we came in originally on one --

7    you know, representing a particular individual, Carlos

8    Cepeda, who was the other beneficiary, he saw fit to

9    basically retain other counsel and these two individuals

10   represent him.  So --

11            THE COURT:  Well, there's only one named

12   plaintiff, I think.

13            MR. STOCKWELL-ALPERT:  Right.  Exactly.

14   There's one plaintiff.  The plaintiff is the

15   administrator who obviously has to bring the case on

16   behalf of the estate.  But there's two different

17   beneficiaries who are having problems coordinating what

18   they think the lawyers are going to do and therefore

19   he's going to basically bring somebody else in.  You're

20   not going to hear from six lawyers at the trial.  That's

21   clearly not going to happen.

22            THE COURT:  Of course I'm not.  There's only

23   one plaintiff.

24            MR. STOCKWELL-ALPERT:  Well, things have

25   gotten extremely complicated and I can just cut to the

1    chase and tell the Court that all that's gone on so far,

2    and obviously this is little or no excuse as far as the

3    Court is concerned, but what I can tell you is --

4              THE COURT:  But let me ask you this, what have

5    you done since August of 2006?  Whose deposition have

6    you taken?  You haven't designated the experts.  Are you

7    going to have experts?  Usually you do.  Have you taken

8    any depositions?

9              MS. LITSAS:  Well, your Honor, the defendant

10   has noticed all of the depositions thus far, but the

11   plaintiffs have not noticed yet one deposition.  We have

12   noticed depositions maybe on 15 or 16 different

13   occasions.  Several of our deponents have failed to

14   appear on numerous occasions.

15             THE COURT:  Well, why didn't you ask the

16   Magistrate Judge to give you an order compelling them to

17   appear, if you want their deposition?

18             MS. LITSAS:  Well, the problem has been that a

19   couple of the witnesses that are involved -- that that

20   isn't our intention.  We have had some difficulty in

21   locating them because some of the witnesses are part of

22   a transient population.

23        Brima Wurie, we noticed him previously prior to

24   the one he filed a motion to regarding his deposition

25   while he's been incarcerated.  The problem was that we

```
1    didn't know he was incarcerated at the time and so there
2    was a long delay.  We started noticing depositions over
3    a year ago.  The problem has been that we've discovered
4    that one of the deponents was unfortunately deceased.
5    Another problem has been difficulty in coordinating
6    dates with plaintiffs' counsel because, from what I
7    understood, there was some complications involving who
8    was representing who, um, what was going on --
9              THE COURT:  Well, there's only -- I mean, I
10   understand the beneficiaries -- how do the beneficiaries
11   have standing to participate in the depositions?
12   There's one plaintiff, Ms. Dancy-Stewart.  The
13   beneficiaries can have lawyers, but how do they get to
14   ask questions?
15             MR. STOCKWELL-ALPERT:  We don't except there's
16   cross-examination.  We can't object but --
17             THE COURT:  No, they don't have any standing
18   to participate in the case.  They can't ask questions.
19   They can't -- they can testify.  Am I missing
20   something?
21             MR. KEEFE:  No, your Honor, not at all.
22             THE COURT:  So what you have to do -- I'm
23   sorry.  Go ahead.
24             MR. KEEFE:  I think, to be fair to both sides,
25   that we dragged our feet unnecessarily.  You know, we
```

```
1    have maybe eight, nine witnesses who we're intending to
2    notice forthwith --
3                MR. STOCKWELL-ALPERT:  We need three months.
4                THE COURT:  You need three months.  But you
5    have to do it.
6                MR. STOCKWELL-ALPERT:  Three months.
7                THE COURT:  I mean, I don't want to throw your
8    case out because you've --
9                MR. STOCKWELL-ALPERT:  We've talked about this
10   between us and --
11               THE COURT:  Let me finish.  I'm trying to
12   agree with you.  See, I have a Northeastern law student
13   and I want to teach her that when you're about to win,
14   that's when you stop talking.
15               (Laughter.)
16               THE COURT:  Is three months enough?
17               MS. LITSAS:  Well, your Honor, it depends on
18   -- I've just been informed today, for the first time,
19   that the plaintiffs intend to take now eight
20   depositions.  You know, we have noticed several
21   depositions.  What he would like is to finish those
22   depositions that have been previously noticed and then
23   the plaintiffs can schedule theirs.  On this basis we
24   would agree.  I think it's only in a matter of
25   fairness.  We have been doing diligent discovery.
```

1          THE COURT:  Well, that's fine.  What

2   depositions do you want?

3          MS. LITSAS:  Well, there is Carlos Fernandes.

4   Luis Carlvalho.

5          THE COURT:  Can you spell that.

6          MS. LITSAS:  Sure.  It's C-A-R-L-V-A-L-H-O.

7          THE COURT:  Go ahead.

8          MS. LITSAS:  Brima Wurie.  He's the one who's

9   incarcerated.

10          THE COURT:  I'm allowing your motion.  There's

11   no objection to it -- to take that?

12          MR. STOCKWELL-ALPERT:  No.

13          MS. LITSAS:  Diana Cepeda.  Who are we

14   missing?  We're continuing Domingas DePina, who is the

15   mother of the deceased.  Her deposition had to be

16   suspended because of childcare issues.  So we'd like to

17   continue with that.  Um --

18          MR. OUELLETTE:  The father.

19          MS. LITSAS:  Carlos Cepeda.

20          MR. OUELLETTE:  Ribaldo.

21          MS. LITSAS:  I'm sorry.  Gabriel Ribaldo, who

22   is the stepfather.

23          THE COURT:  So it's not Carlos Cepeda?

24          MS. LITSAS:  Well, actually what we've done

25   with Carlos Cepeda is we're asking him to produce some

1    documents and that's on Friday.

2              MR. OUELLETTE:  His deposition was already

3    taken.

4              MS. LITSAS:  His deposition was already taken.

5    He's just coming in for document production.

6              THE COURT:  Okay.

7              MS. LITSAS:  The other individual is Dana

8    Grant.

9              THE COURT:  Go ahead.  Who else?

10             MS. LITSAS:  James Nicholas.  And Travo

11   Carter.  And Maria DaRosa, who has failed to appear now

12   on two occasions.

13             THE COURT:  Who is after Nicholas?

14             MS. LITSAS:  Maria DaRosa.

15             THE COURT:  I thought there was somebody else

16   you mentioned.

17             MS. LITSAS:  Travo Carter.

18             THE COURT:  I have to get my rules.  But

19   ordinarily you don't get this many depositions anyway.

20             MR. STOCKWELL-ALPERT:  I think you get ten.

21             MS. LITSAS:  And that was one of the issues we

22   were going to address today, if we could have your

23   permission to depose beyond the ten?  Because these are

24   eyewitnesses and they're damages witnesses to --

25             THE COURT:  Well, take a step back.  Remind me

1  what happened.  In other words, I'm refreshed somewhat

2  by your report, which is just what you're supposed to

3  do, except you have to single space your submissions

4  under the rules or they're supposed to get sent back,

5  which I have increasing appreciation for the importance

6  of.

7            MS. LITSAS:  Oh, I'm sorry, your Honor.

8            THE COURT:  But --

9            MR. STOCKWELL-ALPERT:  This is a police

10  shooting case.

11            THE COURT:  Right.  There were some people in

12  the car --

13            MR. STOCKWELL-ALPERT:  Four people in the car.

14            THE COURT:  And the rest of these people were

15  witnesses?

16            MS. LITSAS:  Yes, your Honor.  There were five

17  people in the car.  The driver, Brima Wurie, and the

18  front seat passenger was Carlos Fernandes.  In the back

19  seat of the car was Maria DaRosa, the decedent, Eveline

20  Barros-Cepeda, and Luis Carlvalho.  So those are

21  individuals we are seeking to depose.  There were two

22  witnesses, Travo Carter and James Nicholas.  Domingas

23  DePina is the mother of the deceased.  Gabriel Ribaldo

24  is the --

25            THE COURT:  And what's she going to testify

```
 1    on, damages?
 2              MS. LITSAS:  According to Mr. Stockwell-
 3    Alpert, yes.  Gabriel Ribaldo is the deceased's
 4    stepfather.  He's also been listed in the other
 5    disclosures as a witness on damages.
 6              MR. STOCKWELL-ALPERT:  I don't plan to call
 7    him, by the way, Judge.
 8              MS. LITSAS:  And I believe Dana Grant is an
 9    investigator hired by Carlos Cepeda, the husband of the
10    deceased, to conduct his own investigation regarding
11    this incident.  I think I've covered everybody.  So each
12    of these witnesses are certainly -- the majority are
13    percipient witnesses, there's a small segment that are
14    damages witnesses, and the remainder are also relevant
15    because of any investigation that was conducted by the
16    deceased's husband.
17              THE COURT:  Now, who did you say you weren't
18    going to call?
19              MR. STOCKWELL-ALPERT:  I'm not going to call
20    Gabriel, Domingas's husband.
21              MR. KEEFE:  Ribaldo.
22              MR. STOCKWELL-ALPERT:  He would not have
23    anything to add to what Domingas would put in.
24              THE COURT:  Okay.  So do you want to drop him
25    from the people you have to depose?
```

1    MR. OUELLETTE:  He's the father of the

2    diseased.  I think he's one of the more important

3    damages witnesses.

4        THE COURT:  I think they're saying they're not

5    going to call him as a witness.  If they tell me that

6    and then they try to call him, I'm going to say that

7    "You can't call him because you represented that you

8    weren't going to call him and as a result of that the

9    deposition wasn't taken," and it will be in the

10   transcript.

11       Do you still need or want to --

12       MS. LITSAS:  Can we think about that, your

13   Honor?

14       THE COURT:  No, because I'm going to -- look,

15   as soon as I let you out of my sight, if I don't give

16   you very specific orders, this is going to go off track

17   again.  So I'm going to tell you who you can depose and

18   who you can --

19       MS. LITSAS:  Okay.  If he's not going to call

20   Gabriel Ribaldo, then we'll agree to not depose him.

21       THE COURT:  Okay.  We'll put that in the

22   order.  It's been represented that Gabriel Ribaldo will

23   not be called by the plaintiff and therefore it's --

24   therefore, in reliance on that representation, the

25   defendants have agreed not to take Ribaldo's

1   deposition.

2        And how long do you think each of these

3   depositions is going to take?

4            MS. LITSAS:  Well, I believe that some of them

5   may -- I've been informed that some of them may not last

6   very long because two of the witnesses, Luis Carlvalho

7   and Maria DaRosa, may, in fact, take their Fifth

8   Amendment.  So I've scheduled these depositions

9   basically -- you know, I've scheduled two or three in

10  one day, so I anticipate two or three hours.  And

11  Domingas DePina is the exception, of course, because she

12  is essentially the witness for the -- on the damages

13  case for the plaintiff.

14           THE COURT:  All right.  So you think you need

15  how many days of depositions, about three or four?

16           MS. LITSAS:  Well, I'd say maybe five days of

17  depositions, just to be on the safe side, because James

18  Nicholas, for example, is a New Hampshire resident, so

19  we have to travel to New Hampshire to conduct his

20  deposition.

21           THE COURT:  Okay.  I'm just trying to figure

22  it out.  And which of these people failed to appear in

23  response to --

24           MS. LITSAS:  To a subpoena?

25           THE COURT:  Yes.

1          MS. LITSAS:  Travo Carter.  Carlos Fernandes.

2    Luis Carlvalho.  Maria DaRosa.  And Brima Wurie,

3    although we know he failed to appear because he was

4    incarcerated.

5          MR. STOCKWELL-ALPERT:  Your Honor --

6          THE COURT:  Do you want to file a motion to

7    compel and tell me what dates you want them to appear?

8          MS. LITSAS:  Sure, I can do that.

9          THE COURT:  How quickly can you do that?

10         MS. LITSAS:  I can do that by the end of the

11   week.

12         THE COURT:  Okay, by 12:00 noon on Friday the

13   21st.

14      Now, is there going to be any opposition to that?

15         MR. STOCKWELL-ALPERT:  Yes, there would be an

16   opposition to a couple of the depositions, but certainly

17   not all of them.

18         THE COURT:  Why?

19         MR. STOCKWELL-ALPERT:  First of all, Luis

20   Carlvalho and Maria DaRosa, I mean, they may well come

21   in and take the Fifth.

22         THE COURT:  Well -- and in a civil case,

23   that's admissible.

24         MR. STOCKWELL-ALPERT:  Right.  Of course.

25   These people went to the grand jury.  They testified at

1   the grand jury.  They gave statements to the police way

2   back at the beginning.  I don't see any relevance or any

3   purpose for a deposition.

4                   THE COURT:  Do you plan to call them?

5                   MR. STOCKWELL-ALPERT:  No, absolutely not.

6                   THE COURT:  But they may want to call them.

7   They can take their deposition.  I mean, they just

8   failed to appear, they didn't --

9                   MR. STOCKWELL-ALPERT:  Right.

10                  THE COURT:  -- they didn't move to quash.

11      Do you all got your calendars?  Why don't you just

12  put a week aside to do the depositions in January and

13  then the defendant will have had her -- the defendants

14  will have had their depositions and then we can talk

15  about plaintiffs.

16                  MS. LITSAS:  That sounds excellent, your

17  Honor.

18                  (Pause.)

19                  THE COURT:  Mr. Keefe's looking at his

20  schedule.  I know he would like to be there, and I'm not

21  saying he can't be there, but he doesn't represent a

22  plaintiff as far as I know, so I'm not going to sculpt

23  this around your schedule.

24                  MR. KEEFE:  No, no, we can make it, your

25  Honor.

1          THE COURT:  All right.  It's going to take you

2    a little -- okay.  What week do you want?

3          MR. KEEFE:  The week of the 28th.

4          THE COURT:  Why put it off that far?

5          MR. STOCKWELL-ALPERT:  I'm good with the week

6    of the 14th.  I think it's January 14th?

7          THE COURT:  Yes, the 14th.

8          MR. STOCKWELL-ALPERT:  And whatever I have to

9    clear, I'll clear.

10          THE COURT:  Okay.

11          MS. LITSAS:  The week of the 14th works for

12    me, your Honor.

13          THE COURT:  All right.  Well, you give me a

14    motion and a proposed order, tell me when and where you

15    want each of them to appear, and I'll enter the order,

16    the week of the 14th.

17          MS. LITSAS:  Excellent.

18          THE COURT:  All right.  And then who does the

19    plaintiff want to depose?

20          MR. STOCKWELL-ALPERT:  The plaintiff is going

21    to depose Thomas Taylor, who is the person who shot, and

22    there's officer --

23          MS. LITSAS:  Paillant.

24          MR. STOCKWELL-ALPERT:  Okay.  Paillant.  Who

25    was the one who allegedly was hit by the vehicle.  And

```
 1   the two police officers -- and I have to go back and
 2   look at the incident report, but the two police officers
 3   who were following behind their vehicle at a slow rate
 4   of speed.
 5              THE COURT:  And what are their names?
 6              MR. STOCKWELL-ALPERT:  I don't recollect right
 7   now.
 8              MR. OUELLETTE:  Deb Flaherty and --
 9              MS. LITSAS:  Robert Conley.
10              MR. OUELLETTE:  Right.
11              MR. STOCKWELL-ALPERT:  Right.  And we're going
12   to depose the ballistics, the person who conducted the
13   ballistics examination.
14              THE COURT:  And who is that?
15              MR. STOCKWELL-ALPERT:  I don't recollect.  Do
16   we have that?
17              MS. LITSAS:  Sergeant Duggan or Lieutenant
18   Harrington.
19              MR. STOCKWELL-ALPERT:  Right.
20              THE COURT:  Well, which one of them?
21              MR. STOCKWELL-ALPERT:  Well, I'm going to have
22   both of them because one of them actually oversaw the
23   whole investigation, which was Sergeant Duggan, I
24   believe.  So we're going to be deposing the one who
25   oversaw the whole weapons discharge investigation and
```

1    then the one who did the ballistics examination of how
2    the bullets hit the car.  And then we have a couple of
3    basically document depositions.  Apparently the injured
4    officer filed a claim against the owner of the vehicle
5    for personal injury and we are going to get that
6    insurance file, okay, to find out what exactly was the
7    injury.
8               THE COURT:  What's the insurance company?
9               MR. STOCKWELL-ALPERT:  Do you recall the
10   insurance company?
11              MR. DeMIRANDA:  I don't recollect right now.
12              MR. STOCKWELL-ALPERT:  I mean, Manny Pires
13   basically has that information.
14              MS. LITSAS:  Your Honor, we would argue how
15   that information is not relevant, the fact that he
16   obtained Worker's Compensation.
17              THE COURT:  No, but if he made statements to
18   the insurance company, it would be relevant.  They might
19   be inconsistent with the deposition testimony.
20              MR. STOCKWELL-ALPERT:  And, in fact, he filed
21   a Worker's Comp. claim as well as a personal injury
22   claim, and so we're really trying to get both of those
23   files.
24              THE COURT:  We're talking here about
25   discovery.  Whether he gets something admissible is a

```
 1    different question.
 2              MR. STOCKWELL-ALPERT:  Right.  And then
 3    there's also the hospital records because apparently he
 4    went to the hospital.  So we're going to get the
 5    hospital records.  So those are the three document
 6    depositions.
 7              THE COURT:  Well, the insurance company, the
 8    hospital, and what's the third?
 9              MR. STOCKWELL-ALPERT:  Worker's Comp.  The
10    insurance company is auto insurance.
11              THE COURT:  All right.
12              MR. STOCKWELL-ALPERT:  And I believe that
13    would sum it up.
14              THE COURT:  All right.  So that's 1, 2, 3, 4,
15    5, 6, 7, 8, 9, 10.  But since you haven't done anything
16    in a year and a half, I really wonder whether you're
17    going to do anything in the next three months.
18              MR. STOCKWELL-ALPERT:  No, everybody is on
19    board now.
20              THE COURT:  All right.  So when do you want to
21    take your depositions?
22              MR. STOCKWELL-ALPERT:  I can take my
23    depositions two weeks after their depositions or
24    sometime in February.  I'll clear my docket, okay, to do
25    this.  I'm serious about moving this case.
```

1          MR. KEEFE:  The week of the 28th would be two

2     weeks afterwards.

3          THE COURT:  The week of the 28th, does that

4     work?

5          MR. KEEFE:  Yeah.

6          MS. LITSAS:  That does work for me, your

7     Honor.  The only concern I have is with some of the

8     officers and their schedules.  It's very difficult to

9     try to coordinate that.  So we would just like some

10    flexibility with that.

11         THE COURT:  Well, you've got five weeks'

12    notice.  They can arrange their schedules.  No, they

13    have to do this.  They have to do this.

14         MS. LITSAS:  Okay.

15         THE COURT:  So let's just do it.

16         MS. LITSAS:  Okay.

17         THE COURT:  I'm not going to let you come back

18    and say --

19         MS. LITSAS:  Oh, I understand.

20         THE COURT:  All right.  Well, the defendant

21    can take up to ten depositions of the people or

22    organizations that have been named beginning January

23    28th.  And is the week sufficient to complete them all?

24         MR. KEEFE:  I think we'll wrap them up in a

25    couple of days, your Honor.

1          THE COURT:  Right.  So they're to be completed
2     by January 31st.
3          MR. STOCKWELL-ALPERT:  That's only four days?
4          MS. LITSAS:  You meant the plaintiffs.
5          THE COURT:  I meant the plaintiffs.  Did I say
6     the defendants?
7          MS. LITSAS:  Yes.
8          THE COURT:  I'm sorry.  All right.  The
9     defendants' depositions of the individuals named are
10    going to be taken from January 14th to January 18th.
11    the plaintiffs' depositions, limited to the people
12    named, are going to be taken January 28th to 31st.
13          MR. STOCKWELL-ALPERT:  That's four days.  Can
14    we have five?
15          THE COURT:  Oh, yes, it is.  It is.  You can
16    have until February 1st.
17          MR. STOCKWELL-ALPERT:  You know, just most
18    respectfully, Thomas Taylor is like the key witness and
19    we may want more --
20          THE COURT:  I gave it to you.  Make sure you
21    leave enough time for him.
22          All right.  Then you haven't designated experts.
23    And the plaintiff has to go first and provide the
24    information required by the pertinent part of Rule 26.
25    Are you going to designate an expert?

1          MR. STOCKWELL-ALPERT:  Yes, we have started

2     discussions with two different experts.  We're going to

3     have a vocational and economic expert basically to

4     testify about what she's earned, this and that, what her

5     skills were and so on for her life, and that would be

6     Dana Hewins, H-E-W-I-N-S.  I haven't spoken to him yet,

7     so it's not caste in concrete.

8          THE COURT:  And who is the other expert?

9          MR. STOCKWELL-ALPERT:  The other would be

10    basically the one who comes in and testifies about, you

11    know, complaints against the City and about customs and

12    policy --

13         THE COURT:  All right.  But if you're going to

14    complete discovery in three months, you're going to have

15    to -- because we've got to leave some time for possible

16    expert depositions, so what about --

17         MR. STOCKWELL-ALPERT:  I'm getting to --

18         THE COURT:  Let me finish.  Let me finish.

19         MR. STOCKWELL-ALPERT:  Yes.

20         THE COURT:  You're going to make Mr. Keefe

21    think that he can get away with this, too.  He's

22    wondering when I got so patient.  I can tell what's

23    going through his head.

24              (Laughter.)

25         THE COURT:  You're going to have to -- we're

1  going to issue an order, but it's Rule 26.

2      The plaintiff shall, by February 8, designate

3  experts and disclose the information required by Federal

4  Rule of Civil Procedure 26(a)(2) concerning each expert

5  and then the defendant will need to do the same by March

6  15th -- March 14th. And I'll actually give you a little

7  more time than you asked me for, because if you want to

8  take a deposition of any expert, the deposition shall be

9  taken by April 11th. And then again, you're going to,

10  by April 18, confer and file a report, each of you, both

11  sides, file a report as to the prospects for settlement

12  and whether either party feels there's a proper basis

13  for filing a motion for summary judgment.

14      What's the date I just gave you for that?

15      THE CLERK: April 18th.

16      THE COURT: And I'm going to see you at 4:00

17  on April 24th to talk about settlement and summary

18  judgment.

19      Now, you might -- well, the defendants have

20  already done this, so we can't really talk about summary

21  judgment because we don't know what the evidence is

22  since discovery is very far from complete, but, you

23  know, they cite a bunch of cases, some of them for

24  familiar propositions, so --

25      Have you had any discussions about whether this

```
1    case can be settled?
2              MR. STOCKWELL-ALPERT:  It was scheduled for
3    mediation and then the City decided that they didn't
4    want to go through with it and that was the last
5    discussion of mediation.
6              THE COURT:  Well, that's fine.
7              MS. LITSAS:  The case law and the evidence,
8    your Honor, we're really not in a position to make that
9    --
10             THE COURT:  No, that's reasonable.  The idea
11   -- the reason I tell you to discuss settlement at the
12   end of discovery is that you know what the evidence is.
13   But the next time you really need to do this.  You're
14   going to be spending some time together so, you know,
15   see what you can do.  Somebody is dead.  Maybe it's just
16   unfortunate, but on the other hand -- you know, just
17   see.
18        But then if I authorize motions for summary
19   judgment -- and I'll change this, but if there are, you
20   know, just disputed facts, then when do I have them
21   coming in?  April 24th?
22             THE CLERK:  Yeah.
23             THE COURT:  We'll have a pretrial conference
24   May 15th and we'll go to trial on May 27th.
25             MR. STOCKWELL-ALPERT:  May I ask one thing?
```

1          THE COURT:  Sure.

2          MR. STOCKWELL-ALPERT:  Could we roll back that

3    4:00 to 3:00?  I have significant transportation issues.

4          THE COURT:  Okay.  What day?

5          THE CLERK:  The 24th.

6          THE COURT:  Okay.  Okay.

7          MR. STOCKWELL-ALPERT:  I would really

8    appreciate that.

9          THE COURT:  Okay.  All right.  Mr. O'Leary

10   will have to remind me to put that at 3:00.

11         MS. LITSAS:  Your Honor, I'm a little confused

12   on the -- if you authorize summary judgment motions --

13         THE COURT:  Then I'm going to change the

14   pretrial conference and the trial dates.

15         MS. LITSAS:  Okay.  So we're not preparing

16   summary judgment motions and trial at the same time?

17         THE COURT:  No.  No.  But if it turns out that

18   you look at it and you see there are disputed material

19   facts and that this case is going to have to be tried,

20   then that's the schedule it will be tried on.

21         MS. LITSAS:  Okay.

22         THE COURT:  If you come and tell me again

23   "We'd like to move for summary judgment," and do just

24   what you did this time, you know, give me a feel for it

25   so I see there's a colorable basis, then I'll say,

1    "Okay, you can file for summary judgment.  We're not

2    going to trial at the end of May.  Here's the schedule

3    for summary judgment."

4              MS. LITSAS:  Okay.  And I'll make sure I'll

5    single space it this time.

6              THE COURT:  Okay.

7              MR. McCAULL:  Your Honor, any chance we can go

8    to the first week of June for trial?

9              THE COURT:  Not as of now.

10             MS. LITSAS:  The other outstanding motions,

11   your Honor --

12             THE COURT:  Oh, yeah, the CORI motion.

13             MS. LITSAS:  The CORI motion, yes.

14             THE COURT:  Yeah, there's no objection to

15   that.  That's allowed, too.  With regard to people who

16   are going to be witnesses, it bears on their

17   credibility.  I think you also asked for the decedent's

18   CORI and I assume that's relevant to damages

19   potentially, right?

20             MS. LITSAS:  Yes.

21             THE COURT:  Okay.  We'll enter an order.  You

22   can have all of that.

23             MS. LITSAS:  I have a proposed order.

24             THE COURT:  Oh, you have a proposed order?

25   Okay.

```
 1              (Hands over.)

 2              THE COURT:  Is it in there?

 3              MS. LITSAS:  Yup, right here, your Honor.

 4    Sorry.  It's not stapled.

 5              THE COURT:  That's all right.

 6              (Signs.)

 7              THE COURT:  Let's see.  You also -- just so

 8    you can get going, because your time is short, you have

 9    the motion to take the deposition and that's allowed.

10    (Signs.)

11         All right.  Are those all the motions?

12              MS. LITSAS:  Yes, your Honor.  Just two other

13    points.  We have yet to receive written discovery from

14    the plaintiff, their answers to interrogatories and

15    document production.  If --

16              THE COURT:  You need it for the --

17              MS. LITSAS:  If there's information that is

18    new or --

19              THE COURT:  You need it for the depositions?

20              MS. LITSAS:  That's right.

21              MR. STOCKWELL-ALPERT:  Two weeks, they'll have

22    it.

23              THE COURT:  Yes.  If they don't have it, I may

24    dismiss the case.

25              MR. STOCKWELL-ALPERT:  Three weeks.
```

1          THE COURT:  No, not three weeks.  They've got
2     a deposition January 14th.  They want to read it.
3          MR. STOCKWELL-ALPERT:  Right.
4          MS. LITSAS:  And, your Honor, we would just
5     reserve the right to call in to -- if we need to add
6     other witnesses to our deposition list, I'll just file a
7     motion.
8          THE COURT:  You'll have to file a motion.  You
9     have a right to file a motion.  You don't have a right
10    to add people.  But that's fine.
11         You're to -- we'll say by January 3rd, I'm
12    ordering -- what do you have, interrogatories?
13         MS. LITSAS:  Interrogatories and requests for
14    production of documents.
15         THE COURT:  All right.  The plaintiff is to
16    respond to the pending interrogatories and pending
17    request for production of documents by January 3, 2008
18    and it needs to be everything.
19         MS. LITSAS:  The underlying probate case
20    involving the decedent's estate, apparently we've just
21    learned that the material is impounded in the probate
22    court, so we do not have access to it.  What are your
23    recommendations as far as accessing that material,
24    should we seek an order from you or --
25         THE COURT:  Well, let me ask you this.

1          MS. LITSAS:  He's refused to provide that
2    information to us.
3          MR. STOCKWELL-ALPERT:  I didn't refuse.  What
4    I said was that I'm not going to have the executor or
5    the administrator of the estate go to court and try to
6    unimpound these documents without them coming in and
7    making some sort of showing that the probate court
8    documents, which have been impounded for particular
9    reasons, are relevant to anything.
10          THE COURT:  What's in the probate court
11    documents, potentially?
12          MS. LITSAS:  Apparently there's information
13    regarding some of the witnesses that may be testifying,
14    Mr. Carlos Cepeda.  There's information that has been
15    discussed because there was a child custody dispute or a
16    guardianship dispute over the grandmother of the -- or
17    the mother of the decedent, who is the grandmother, and
18    the father of the child.  Apparently --
19          THE COURT:  What's the relevance?
20          MS. LITSAS:  The relevance is because it goes
21    to damages and Domingas DePina is going to be a witness
22    who is going to testify at the trial on behalf of the
23    decedent.  She's going to talk about her daughter.
24    She's going to talk about her grandchild.  And all of
25    that information has been --

```
1              THE COURT:  Well, who provided the information
2    to the probate court?
3              MS. LITSAS:  Domingas DePina.
4              THE COURT:  Fine.  You can get it from
5    Domingas DePina.  Why do you have to get it from the
6    court?
7              MS. LITSAS:  Because the court --
8              THE COURT:  The fact that it's impounded in
9    the court record doesn't mean that Mr. DePina can't give
10   it to you.  Who represents Mr. DePina?
11             MS. LITSAS:  No one.  I just learned the other
12   day at her deposition that Mr. Stockwell-Alpert is not
13   representing her.
14             MR. STOCKWELL-ALPERT:  I never have
15   represented her.
16             THE COURT:  Oh, DePina is a female.
17             MR. STOCKWELL-ALPERT:  Right.
18             THE COURT:  Well, my point is as follows.  I
19   think if you want to discover something that's in the
20   probate records -- and I don't know who the parties of
21   the probate dispute, you know, the probate matter, are,
22   you'll have to go to the probate court to unseal them.
23             MS. LITSAS:  Okay.
24             THE COURT:  But the fact that something is
25   sealed at the probate court doesn't mean that you can't
```

```
 1    obtain the same information from whoever gave it to the

 2    probate court.

 3              MS. LITSAS:  I understand that, your Honor.

 4              THE COURT:  So, you know, in connection with

 5    the subpoena to Mr. -- Miss DePina for the deposition,

 6    ask for copies of everything that DePina provided to the

 7    probate court.  That's one way to get it.  And then I

 8    don't know who else provided information to the probate

 9    court.

10              MS. LITSAS:  Certainly any testimony that --

11              THE COURT:  Or you can go into probate court

12    and move to have it unsealed subject to some protective

13    order.  But I don't, A, have a motion before me with a

14    memorandum.  I have questions about my authority to

15    essentially unseal, for limited purposes, records in

16    another court.

17              MS. LITSAS:  I understand, your Honor.

18              THE COURT:  And if I have the authority, I

19    have questions about the propriety of doing it.

20              MS. LITSAS:  Okay.

21              THE COURT:  Now --

22              MR. STOCKWELL-ALPERT:  I have an issue about

23    that, too, as well.

24              THE COURT:  And what is that?

25              MR. STOCKWELL-ALPERT:  And that is that Miss
```

1    DePina was the guardian of the child after a long and
2    protracted battle and she's not the administrator, and
3    -- she had an attorney representing her and Carlos
4    Cepeda had these attorneys representing him.  It would
5    seem to me that if, in fact, anything was directed to
6    anybody, it would have to be directed to Domingas
7    DePina's attorney who represented her in the probate
8    court who can make the decision, because Domingas DePina
9    gave nothing to anybody.  She was represented by a
10   lawyer who filed all the papers and the relevant
11   documents and things like that in court.  So Domingas
12   DePina has nothing to give with respect to anything.
13   And I would suggest that you have to go to the attorney
14   for Domingas DePina.
15            THE COURT:  You mean take the attorney's
16   deposition?
17            MR. STOCKWELL-ALPERT:  No, go to the attorney
18   and see if the attorney would go along with unsealing
19   the record or anything.  He's got the standing to come
20   in and object to it.
21            THE COURT:  No, I think that he's the
22   witness's agent and anything that you give to an
23   attorney, that it is in the custody and control of the
24   client.
25            MR. STOCKWELL-ALPERT:  So if you're talking

1    about specifically documents and things that she

2    provided him with, that's one thing. If you're trying

3    to get at anything else, there might be work product or

4    anything else in the probate court, that's another

5    matter. And she can certainly inquire of Domingas as to

6    what if any documents did she actually give.

7              THE COURT: She wants to get the documents

8    before the deposition, I assume.

9              MS. LITSAS: And certainly any testimony that

10   was provided in the proceeding that is directly relevant

11   at least for -- well, not just for damages purposes, but

12   also for impeachment purposes.

13             THE COURT: Well, you may need to go to the

14   court for that. I don't know whether the transcripts

15   have been made.

16             MS. LITSAS: Yes. Thank you.

17             THE COURT: But anything in an attorney's

18   possession on behalf of a client is within the client's

19   custody and control. It's not immunized from production

20   because the attorney's holding it. And if there's some

21   work product privilege, then that's something else.

22             MR. STOCKWELL-ALPERT: Well, I guess, your

23   Honor -- and just to not belabor this, but quickly, that

24   if she didn't give him any documents to file and the

25   administrator of the estate has no documents prepared by

1    her --

2                  THE COURT:  You want to listen to this.

3                  MS. LITSAS:  Excuse me.

4                  THE COURT:  Go ahead.

5                  MR. STOCKWELL-ALPERT:  If she hasn't given any

6    documents to her lawyer and the lawyer simply went ahead

7    and prepared an administration of the estate and an

8    administrator was appointed, then there's no connection

9    between her and anything that you're trying to

10   discover.  And it seems that the issue can be simply

11   resolved by making an inquiry as to what if any

12   documents that she provided to her lawyer to the probate

13   court, because everything else is sealed.

14                  THE COURT:  I don't have a motion in front of

15   me, but I'm telling you that the fact that something's

16   under seal in court doesn't mean it's not discoverable.

17   Somebody might move to quash the subpoena and say, "No,

18   there's a proper basis.  It's attorney-client privilege,

19   it's work product."  But the fact that it's sealed in

20   court doesn't mean that it can't be -- doesn't

21   automatically mean it can't be produced by the client or

22   her agent.

23        So if you have to come back to me on any of this,

24   that's the understanding I'm going to start with and

25   you'll have to give me some authority for some different

1    proposition.

2         All right.  Now, the past cannot be prologue.  I

3    very rarely conduct a scheduling conference with the

4    court reporter present, but he's present.  He's going to

5    put this on my laptop so that I can pull up the draft

6    even if you don't order it.  And, you know, to the

7    extent that the plaintiff has any influence over the

8    people that the defendants want to depose, you should

9    exert that influence to cause them to come.  Because if

10   they don't give their depositions, the plaintiff is

11   certainly not going to be permitted to call them at

12   trial or at least they're going to say there's a

13   prejudice, they shouldn't be allowed to testify at

14   trial.

15        Similarly, you know, I know these are police

16   officers, but now they've got six weeks' notice.  You

17   can go out and sit in my conference room, decide what

18   dates you prefer for each of the police officers, and

19   put the time aside.  But they have to do it.

20             MS. LITSAS:  Absolutely, your Honor.

21   Absolutely.

22             MR. STOCKWELL-ALPERT:  Judge, we have not done

23   anything to interfere with them trying to get any

24   witness -- we're not calling any of these people and

25   some of them have Fifth Amendment issues.  And I don't

1    think we have any obligation --

2                THE COURT:  No, no, that's fine.  I was

3    thinking about people you might be calling.  No, you

4    don't have an obligation to cause other witnesses to

5    appear.  On the other hand, I'm going to issue an order

6    if they haven't -- just for the people who have failed

7    to obey notices of deposition, so you'll have to

8    describe that to me, to appear.  If they fail to appear

9    and there's a motion to hold them in contempt, I'll have

10   to send the marshals out to get them.

11               MR. STOCKWELL-ALPERT:  So be it.

12               THE COURT:  They have other things to do.

13               MR. STOCKWELL-ALPERT:  Well, I don't want you

14   to have to do that either, but --

15               THE COURT:  No, I'm not saying I do, I'm

16   saying the marshals have other things to do.  No, I can

17   send them out.  It's not a great effort on my part.  And

18   then the marshals will take them and they'll lock them

19   up until they give their deposition.  I'll hold them in

20   civil contempt.  But, you know, unless they like being

21   locked up, they should come for their deposition.

22               MS. LITSAS:  Thank you, your Honor.  We're

23   trying to be as -- we understand that a couple of these

24   witnesses had family emergencies or some type of

25   situations, but other witnesses have just failed to

1   appear.  That's why we held off on that motion to compel
2   to give people in certain circumstances --

3              THE COURT:  Well, I'm afraid their lives are
4   not going to get any less chaotic, so this is the time.
5   And, you know, it's a serious thing, you know, because
6   somebody's killed and it's a serious thing because there
7   are serious allegations against the defendants, and so
8   it's got to be taken seriously and done properly.

9              MS. LITSAS:  I agree, your Honor.

10             THE COURT:  All right.  Now you've got a
11  schedule.  More?

12             MS. LITSAS:  I just wanted to put you on
13  notice of the -- of Shenia Dancy-Stewart, she's the
14  administrator of the estate.  Mr. Stockwell-Alpert did
15  give me the opportunity to speak with her informally.  I
16  haven't yet had the opportunity.  But if for some reason
17  I don't have that -- if she's not cooperative or refuses
18  to talk with me, I would like the opportunity to reserve
19  my right to depose her, since she is the administrator.

20             THE COURT:  Well, at this point you don't have
21  the right, you have to ask me, because I asked you to
22  tell me everybody you've been trying to depose since
23  August of 2006 and you told me.  So the people you told
24  me, you have a right to depose, that week of January
25  14th, but anybody else you're going to have to persuade

1   me should be added.  Okay?

2           MS. LITSAS:  Will do.  Thank you, your Honor.

3           MR. STOCKWELL-ALPERT:  Thank you, Judge.

4           MR. McCAULL:  Thank you, very much.

5           MS. LITSAS:  Thank you for your time.

6           (Ends, 2:00 p.m.)

```
1                    C E R T I F I C A T E
2
3
4
5
6
7
8        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,
9    do hereby certify that the foregoing record is a true
10   and accurate transcription of my stenographic notes
11   before Chief Judge Mark L. Wolf, on December 19, 2007,
12   to the best of my skill and ability.
13
14
15
16
17
18
19
     /s/ Richard H. Romanow
20   _____
     RICHARD H. ROMANOW
21
22
23
24
25
```