# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 05-11803-MLW

SHENIA DANCY-STEWART as
Administratrix of the Estate of EVELINE
BARROS-CEPEDA,
     Plaintiffs,

v.

THOMAS TAYLOR, Jr., and the CITY
OF BOSTON,
     Defendants.

## DEFENDANT CITY OF BOSTON'S EMERGENCY MOTION TO QUASH PLAINTIFF'S DEPOSITION SUBPOENA TO THE BOSTON POLICE DEPARTMENT'S KEEPER OF RECORDS

The Defendant, City of Boston, hereby moves to quash the deposition subpoena served upon the Boston Police Department's Keeper of Records, attached hereto as Exhibit A. As grounds therefore, the Defendant states the following:

1. The Plaintiff has served on the Defendant, City of Boston, a Keeper of Records deposition subpoena to the Boston Police Department with a request that the Defendant produce voluminous, complex and irrelevant documents at a deposition scheduled for Friday, February 1, 2008.

2. The Plaintiff attempts to circumvent the discovery rules by serving a named defendant with a Keeper of Records deposition subpoena that not only violates the discovery rules, but also this Court's strict Orders governing discovery in this case, dated December 20, 2007 and January 29, 2008.

3. The Plaintiff has violated the discovery rules because the proper mechanism for obtaining the voluminous and complex documents sought by the Plaintiff falls under Rule 34. See Carter v. United States, 164 F.R.D. 132 (D. Mass. 1995); see also Canal Barge Company v. Commonwealth Edison Company, 2001 WL 817853 (N.D. Ill. 2001) (recognizing that a document request under Rule 30(b)(5) cannot be a substitute for a Rule 34 request).

4. In this case, the Plaintiff failed to serve her Rule 34 request for production of documents in timely fashion during the extensive discovery period permitted in this case.

5.  In fact, as of the date of this Court's December 20, 2007 status conference, the Plaintiff had not noticed any depositions, served any interrogatories on any party or requested any documents beyond those listed in Defendants Rule 26.1 disclosures.

6.  In fact, this Court issued a Memorandum and Order, dated today, January 29, 2008, denying Plaintiff's Motion to Compel the Defendants to answer untimely filed written interrogatory requests and requests for production of documents. See Memorandum and Order, dated January 29, 2008, Document No. 71, at 1-2.

7.  Additionally, this Court's Memorandum and Order held that "the defendants have correctly interpreted this Court's December 20, 2007 Order *as authorizing only the limited additional discovery explicitly discussed and ordered at the December 19, 2007 status conference.*" See id. at 2 (emphasis added).

8.  Accordingly, under this Order, the Plaintiff is not permitted to conduct this Keeper of the Records deposition because at no point during the December 20, 2007 status conference did Plaintiff make any mention of or request any Keeper of Records deposition specifically involving the City of Boston's Police Department. See Exhibit B, Transcript of December 20, 2007 Status Conference.

9.  The only keeper of records depositions mentioned by the Plaintiff involved obtaining the records of Officer Michael Paillant, the officer injured during the September 8, 2002 incident. During the conference, the Plaintiff stated that she sought the hospital records, insurance documents and worker's compensation file of Officer Paillant, and concluded her requests by stating, "And I believe that would sum it up." See Exhibit B, at 20-21. Notably, Schedule A of the Plaintiff's Keeper of Records Deposition Subpoena does not request the documents discussed by the Plaintiff during the status conference. See Exhibit A.

10. As additional grounds for the Defendant's Motion to Quash, the Defendant notes that the Plaintiff's request fails to comply with the governing rules. Here, the Plaintiff served the Defendant with a Keeper of Records Subpoena on January 22, 2008 for a deposition scheduled for February 1, 2008, less than the 30 days required under the Rules, which in pertinent part state:.

> [t]he notice to a party deponent may be accompanied by a request made in compliance with Rule 34 for the production of documents and tangible things at the taking of the deposition. The procedure of Rule 34 should apply to the request.

Fed. R. Civ. P. 30(b)(5). Here, Rule 34's procedure has not been followed.

11. Given the Plaintiff's violation of the discovery rules and this Court's discovery Orders,

the Defendant requests that its Motion to Quash be allowed.

Respectfully submitted,
DEFENDANT CITY OF BOSTON,

By its attorneys:

/s/ Helen G. Litsas

_____

Helen G. Litsas #644848
Special Assistant Corporation Counsel
Hollett Building
38 Main Street
Saugus, MA 01906
(781) 231-8090

Evan C. Ouellette, BBO # 655934
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617)635-4048

## CERTIFICATE OF SERVICE

I, Helen G. Litsas, hereby certify that on this date I served a copy of the foregoing documents upon lead plaintiff's counsel, Andrew Stockwell-Alpert, by electronic filing and by postage prepaid, first class, U.S. Mail.

1/29/08        /s/ Helen G. Litsas

Date          Helen G. Litsas

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

Pursuant to L.R. D. Mass. 7.1(A)(2), I hereby certify that I communicated with Plaintiff's Attorney, Andrew Stockwell-Alpert, regarding *Defendant City of Boston's Motion to Quash the Keeper of Records Deposition of the Boston Police Department* and we were unable to narrow the issues.

1/29/08        /s/ Helen G. Litsas


Date           Helen G. Litsas

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHENIA DANCY-STEWART as Administratrix of the Estate of EVELINE BARROS-CEPEDA, Plaintiff<br><br>v.<br><br>THOMAS TAYLOR, Jr., and the CITY OF BOSTON<br>Defendants | ) Civil Action<br>) No.0511803MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

To:    Evan Ouelette, Esq.
City of Boston Law Dept.
City Hall – Rom 615
Boston, MA

Please take notice that at <u>ten</u> o'clock <u>AM</u> on Friday, February 1, 008, at the law offices of Andrew Stockwell-Alpert, 11 Beacon Street, Suite 1210, Boston, Massachusetts the plaintiff by his attorney will take the deposition upon oral examination of the Keeper of the Records for the Boston Police Department pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before an officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

You are invited to attend and cross-examine.

Respectfully,

Attorney for  <u>plaintiff</u>

CERTIFICATE OF SERVICE

I hereby certify that on <u>January 22, 2008</u>, I served the above notice on the <u>defendant</u> in the above-entitled action by fax and mailing a copy, postage prepaid, to his counsel of record.

# SCHEDULE A

1. Any and all documents that comprise or are part of your personnel file of the defendant, Thomas Taylor, including the disciplinary records, and any other documents in the possession of the defendant that concern his hiring, training, duties, performance, assignments, and mental and physical condition.

2. Any and all documents concerning or at all relevant to any formal or informal complaint made against or about the defendant Thomas Taylor from any source and concerning any subject matter. This includes, but is not limited to:

   a. documents concerning all complaints and other disciplinary or police review of activities by the Internal Affairs Bureau;
   b. the complete documents concerning each incident listed on the disciplinary record for defendant Roe.
   c. the complete documents concerning all complaints and other disciplinary or internal police review of activities maintained by the Boston Police Department concerning defendant Taylor and
   d. All information contained in the computers maintained by the Internal Affairs Bureau of the Boston Police Department or any other division of the Metropolis Police Department concerning the complaints made against the defendant Roe, including but not limited to the information which is retrievable by computer codes.

3. For the period January 1, 1997 to the current date all police guidelines, directives, policy statements, procedures, and training materials, in any form and of any type, concerning police policy, custom or practice regarding:

   a. discipline of offers generally;
   b. specific discipline for the violation of constitutional rights;
   c. the procedure for the use of deadly force to stop moving vehicles

4. The complete file with all documents in their original, unedited, unabridged, unredacted condition of the internal investigation by the Boston Police Department of the following police shooting incidents:

   Michael Clougherty          Rene Junior Romain
   Kingsley Boyd               La Veta Jackson
   Eugene Thibeau              Nelson Santiago
   Ricky Bolden                William Murray
   Carlos Garcia               Israel Vasquez-Robles
   Jose Pineda                 Bert Bowen

Justin Ronchetti                    Victoria Snelgrove
Luis Gonzalez                       Stanley Seney
Evelyn Barros-Cepeda

5.    The complete file with all documents in their original, unedited, unabridged,
      unredacted condition of every other internal investigation by the Boston
      Police Department of police shooting incidents from 1997 to date.

6.    The complete record of Thomas Taylor's performance at the Moon Island
      firing range.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

SHENIA DANCY-STEWART as Administratnx of the
Estate of Eveline Barros-Cepeda
V.

THOMAS TAYLOR, Jr. and the CITY OF BOSTON

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  05-11803-MLW

TO:    KEEPER OF RECORDS
Boston Police Department
One Schroeder Plaza, Boston, MA 02120-2014

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION  Law Offices of Andrew Stockwell-Alpert<br>11 Beacon St., Suite 1210, Boston, MA 02108 | DATE AND TIME<br>2/1/2008  2:00 pm |
| --- | --- |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

Please see scheduling attached herewith.

| PLACE | DATE AND TIME |
| --- | --- |
|  |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
|  | 1/18/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Andrew Stockwell-Alpert, Esq.
11 Beacon Street, Suite 1210, Boston, MA 02108. Telephone No. (617)720-4244

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

1

```
1              UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS

3                         No. 1:05-cv-11803-MLW

4

5
     SHENIA DANCY-STEWART, et al,
6              Plaintiffs

7
     vs.
8

9
     THOMAS TAYLOR, JR., et al,
10             Defendants

11

12                      * * * * * * * *

13

14              For Hearing Before:
                Chief Judge Mark L. Wolf
15

16              Lobby Conference

17
                United States District Court
18              District of Massachusetts (Boston)
                One Courthouse Way
19              Boston, Massachusetts 02210
                December 19, 2007
20

21                      * * * * * * *

22
                REPORTER: RICHARD H. ROMANOW, RPR
23                  Official Court Reporter
                United States District Court
24       One Courthouse Way, Room 5200, Boston, MA 02210
                     (617) 737-0370
25
```

```
 1                    A P P E A R A N C E S

 2

 3    ANDREW STOCKWELL-ALPERT, ESQ.
         Law Office of Andrew Stockwell-Alpert
 4       11 Beacon Street
         Suite 1210
 5       Boston, Massachusetts 02108
         (617) 720-4244
 6   and
      WILLIAM KEEFE, ESQ.
 7       Law Office of William Keefe
         390 Centre Street
 8       Jamaica Plain, Massachusetts 02130
         (617) 983-9200
 9       Email: Wkeefelaw@yahoo.com
     and
10    JAMES McCAULL, ESQ.
      ADELIO DeMIRANDA, ESQ.
11       For the Administratrix and individual plaintiffs

12    HELEN G. LITSAS, ESQ.
         Law Office of Helen G. Litsas
13       Hollett Building
         38 Main Street
14       Boston, Massachusetts 01906
         (781) 231-8090
15       Email: Helen@litsaslaw.com
     and
16    EVAN C. OUELLETTE, ESQ.
         City of Boston Law Department
17       Boston City Hall
         One City Hall Plaza, Room 615
18       Boston, Massachusetts 02201
         (617) 635-4048
19       Email: Evan.ouellette@cityofboston.gov
         For Defendants

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S

 2         (Lobby, 1:00 p.m.)

 3              THE COURT:  All right.  Why don't you tell me

 4    or remind me who you are and who you represent.

 5              MR. STOCKWELL-ALPERT:  Good afternoon.  I'm

 6    attorney Andrew Stockwell-Alpert and I represent Shenia

 7    Dancy-Stewart who is the plaintiff administrator of the

 8    estate.

 9              MR. McCAULL:  Your Honor, James McCaull.  Same

10    as Mr. Alpert.  My name is not on the complaint.  I

11    don't think I filed an appearance yet, but I will.  I

12    shall.

13              MR. DeMIRANDA:  Adelio DeMiranda, your Honor,

14    and I represent Shenia Dancy-Stewart.

15              THE COURT:  How do you spell your last name?

16              MR. DeMIRANDA:  D-E-M-I-R-A-N-D-A.

17              THE COURT:  Okay.

18              MR. KEEFE:  The same of William Keefe, for the

19    record, for the plaintiff, and along with Mr. Stockwell-

20    Alpert.  I have my appearance in.

21              MS. LITSAS:  Good afternoon, your Honor.  I'm

22    Helen Litsas.  I represent the two defendants in this

23    action, the City of Boston and Thomas Taylor.

24              MR. OUELLETTE:  Evan Ouellette, and my last

25    name is spelled O-U-E-L-L-E-T-T-E, and I also represent
```

1  the two defendants, the City of Boston and Thomas
2  Taylor.

3          THE COURT:  All right.  Well, you've got a lot
4  of lawyers, but you haven't made the progress you told
5  me you were going to make when we had the scheduling
6  conference in August of 2006.  And despite the fact the
7  plaintiffs have got four lawyers, you didn't file the
8  report that was due on December 14th.  So -- from based
9  on what I read, I don't understand why I would extend
10 the schedule nine months and maybe I shouldn't extend it
11 at all, because it looks like some of these depositions
12 you had trouble getting weren't noticed until November
13 and you find out the deponent's in jail.

14         But what's going on?  You know, cases are hard and
15 sometimes things happen, but you've got to work
16 diligently at them.  And, you know, with six lawyers
17 representing three parties, this should be doable.

18         MR. STOCKWELL-ALPERT:  I guess I should speak
19 first, because I'm probably the only one you've had any
20 consistent contact with and I was the one who came in
21 for the scheduling conference.

22         There have been a lot of -- I can say a lot of
23 things, but nothing is really an excuse or a
24 justification.  Um, there has been an awful lot of --
25         We need to start out with the fact that we're not

 1    really all six representing the same entity, there are

 2    three of us representing one of the beneficiaries and

 3    two representing the other, but you can't represent

 4    beneficiaries.  There are all six representing the

 5    estate.  And the reason that's an issue is --

 6            THE COURT:  You mean the four of you.  They

 7    represent the defendants.

 8            MR. STOCKWELL-ALPERT:  Oh, I'm sorry.  That's

 9    right.  There are two others who aren't here.

10            THE COURT:  Oh, there are two others who

11    aren't here?

12            MR. STOCKWELL-ALPERT:  Right.

13            THE COURT:  Where are they?

14            MR. STOCKWELL-ALPERT:  Well, Manuel Pires, his

15    mother died suddenly last Friday after a six-month bout

16    with pancreatic cancer and so he's been taking the week

17    off and the funeral is tomorrow and so he's kind of

18    preoccupied right now.

19            And that's one of the things that has been a

20    problem with me, by the way, is that as I told you way

21    back when, that I'm legally blind, and so when I do a

22    lot of this discovery, I obviously rely on people around

23    me to help me with the reading and sorting things out

24    and doing some of the leg-work.  The communication all

25    around has been somewhat complicated by two factors.

1     There's kind of -- and this is utterly irrelevant
2     to you from the standpoint of moving the case, but
3     there's kind of a split in the beneficiaries with regard
4     to what they consider to be the value of each of their
5     cases and how they're going to be best represented.  And
6     so as a result, although we came in originally on one --
7     you know, representing a particular individual, Carlos
8     Cepeda, who was the other beneficiary, he saw fit to
9     basically retain other counsel and these two individuals
10    represent him.  So --
11         THE COURT:  Well, there's only one named
12    plaintiff, I think.
13         MR. STOCKWELL-ALPERT:  Right.  Exactly.
14    There's one plaintiff.  The plaintiff is the
15    administrator who obviously has to bring the case on
16    behalf of the estate.  But there's two different
17    beneficiaries who are having problems coordinating what
18    they think the lawyers are going to do and therefore
19    he's going to basically bring somebody else in.  You're
20    not going to hear from six lawyers at the trial.  That's
21    clearly not going to happen.
22         THE COURT:  Of course I'm not.  There's only
23    one plaintiff.
24         MR. STOCKWELL-ALPERT:  Well, things have
25    gotten extremely complicated and I can just cut to the

1    chase and tell the Court that all that's gone on so far,
2    and obviously this is little or no excuse as far as the
3    Court is concerned, but what I can tell you is --

4           THE COURT:  But let me ask you this, what have
5    you done since August of 2006?  Whose deposition have
6    you taken?  You haven't designated the experts.  Are you
7    going to have experts?  Usually you do.  Have you taken
8    any depositions?

9           MS. LITSAS:  Well, your Honor, the defendant
10   has noticed all of the depositions thus far, but the
11   plaintiffs have not noticed yet one deposition.  We have
12   noticed depositions maybe on 15 or 16 different
13   occasions.  Several of our deponents have failed to
14   appear on numerous occasions.

15          THE COURT:  Well, why didn't you ask the
16   Magistrate Judge to give you an order compelling them to
17   appear, if you want their deposition?

18          MS. LITSAS:  Well, the problem has been that a
19   couple of the witnesses that are involved -- that that
20   isn't our intention.  We have had some difficulty in
21   locating them because some of the witnesses are part of
22   a transient population.

23       Brima Wurie, we noticed him previously prior to
24   the one he filed a motion to regarding his deposition
25   while he's been incarcerated.  The problem was that we

1    didn't know he was incarcerated at the time and so there

2    was a long delay.  We started noticing depositions over

3    a year ago.  The problem has been that we've discovered

4    that one of the deponents was unfortunately deceased.

5    Another problem has been difficulty in coordinating

6    dates with plaintiffs' counsel because, from what I

7    understood, there was some complications involving who

8    was representing who, um, what was going on --

9              THE COURT:  Well, there's only -- I mean, I

10   understand the beneficiaries -- how do the beneficiaries

11   have standing to participate in the depositions?

12   There's one plaintiff, Ms. Dancy-Stewart.  The

13   beneficiaries can have lawyers, but how do they get to

14   ask questions?

15             MR. STOCKWELL-ALPERT:  We don't except there's

16   cross-examination.  We can't object but --

17             THE COURT:  No, they don't have any standing

18   to participate in the case.  They can't ask questions.

19   They can't -- they can testify.  Am I missing

20   something?

21             MR. KEEFE:  No, your Honor, not at all.

22             THE COURT:  So what you have to do -- I'm

23   sorry.  Go ahead.

24             MR. KEEFE:  I think, to be fair to both sides,

25   that we dragged our feet unnecessarily.  You know, we

```
1    have maybe eight, nine witnesses who we're intending to
2    notice forthwith --
3               MR. STOCKWELL-ALPERT:  We need three months.
4               THE COURT:  You need three months.  But you
5    have to do it.
6               MR. STOCKWELL-ALPERT:  Three months.
7               THE COURT:  I mean, I don't want to throw your
8    case out because you've --
9               MR. STOCKWELL-ALPERT:  We've talked about this
10   between us and --
11              THE COURT:  Let me finish.  I'm trying to
12   agree with you.  See, I have a Northeastern law student
13   and I want to teach her that when you're about to win,
14   that's when you stop talking.
15              (Laughter.)
16              THE COURT:  Is three months enough?
17              MS. LITSAS:  Well, your Honor, it depends on
18   -- I've just been informed today, for the first time,
19   that the plaintiffs intend to take now eight
20   depositions.  You know, we have noticed several
21   depositions.  What he would like is to finish those
22   depositions that have been previously noticed and then
23   the plaintiffs can schedule theirs.  On this basis we
24   would agree.  I think it's only in a matter of
25   fairness.  We have been doing diligent discovery.
```

| | |
|---|---|
| 1 | THE COURT:  Well, that's fine.  What |
| 2 | depositions do you want? |
| 3 | MS. LITSAS:  Well, there is Carlos Fernandes. |
| 4 | Luis Carlvalho. |
| 5 | THE COURT:  Can you spell that? |
| 6 | MS. LITSAS:  Sure.  It's C-A-R-L-V-A-L-H-O. |
| 7 | THE COURT:  Go ahead. |
| 8 | MS. LITSAS:  Brima Wurie.  He's the one who's |
| 9 | incarcerated. |
| 10 | THE COURT:  I'm allowing your motion.  There's |
| 11 | no objection to it -- to take that? |
| 12 | MR. STOCKWELL-ALPERT:  No. |
| 13 | MS. LITSAS:  Diana Cepeda.  Who are we |
| 14 | missing?  We're continuing Domingas DePina, who is the |
| 15 | mother of the deceased.  Her deposition had to be |
| 16 | suspended because of childcare issues.  So we'd like to |
| 17 | continue with that.  Um -- |
| 18 | MR. OUELLETTE:  The father. |
| 19 | MS. LITSAS:  Carlos Cepeda. |
| 20 | MR. OUELLETTE:  Ribaldo. |
| 21 | MS. LITSAS:  I'm sorry.  Gabriel Ribaldo, who |
| 22 | is the stepfather. |
| 23 | THE COURT:  So it's not Carlos Cepeda? |
| 24 | MS. LITSAS:  Well, actually what we've done |
| 25 | with Carlos Cepeda is we're asking him to produce some |

1  documents and that's on Friday.

2           MR. OUELLETTE:  His deposition was already

3  taken.

4           MS. LITSAS:  His deposition was already taken.

5  He's just coming in for document production.

6           THE COURT:  Okay.

7           MS. LITSAS:  The other individual is Dana

8  Grant.

9           THE COURT:  Go ahead.  Who else?

10          MS. LITSAS:  James Nicholas.  And Travo

11  Carter.  And Maria DaRosa, who has failed to appear now

12  on two occasions.

13          THE COURT:  Who is after Nicholas?

14          MS. LITSAS:  Maria DaRosa.

15          THE COURT:  I thought there was somebody else

16  you mentioned.

17          MS. LITSAS:  Travo Carter.

18          THE COURT:  I have to get my rules.  But

19  ordinarily you don't get this many depositions anyway.

20          MR. STOCKWELL-ALPERT:  I think you get ten.

21          MS. LITSAS:  And that was one of the issues we

22  were going to address today, if we could have your

23  permission to depose beyond the ten?  Because these are

24  eyewitnesses and they're damages witnesses to --

25          THE COURT:  Well, take a step back.  Remind me

1    what happened.  In other words, I'm refreshed somewhat

2    by your report, which is just what you're supposed to

3    do, except you have to single space your submissions

4    under the rules or they're supposed to get sent back,

5    which I have increasing appreciation for the importance

6    of.

7              MS. LITSAS:  Oh, I'm sorry, your Honor.

8              THE COURT:  But --

9              MR. STOCKWELL-ALPERT:  This is a police

10   shooting case.

11             THE COURT:  Right.  There were some people in

12   the car --

13             MR. STOCKWELL-ALPERT:  Four people in the car.

14             THE COURT:  And the rest of these people were

15   witnesses?

16             MS. LITSAS:  Yes, your Honor.  There were five

17   people in the car.  The driver, Brima Wurie, and the

18   front seat passenger was Carlos Fernandes.  In the back

19   seat of the car was Maria DaRosa, the decedent, Eveline

20   Barros-Cepeda, and Luis Carlvalho.  So those are

21   individuals we are seeking to depose.  There were two

22   witnesses, Travo Carter and James Nicholas.  Domingas

23   DePina is the mother of the deceased.  Gabriel Ribaldo

24   is the --

25             THE COURT:  And what's she going to testify

1    on, damages?

2            MS. LITSAS:  According to Mr. Stockwell-

3    Alpert, yes.  Gabriel Ribaldo is the deceased's

4    stepfather.  He's also been listed in the other

5    disclosures as a witness on damages.

6            MR. STOCKWELL-ALPERT:  I don't plan to call

7    him, by the way, Judge.

8            MS. LITSAS:  And I believe Dana Grant is an

9    investigator hired by Carlos Cepeda, the husband of the

10   deceased, to conduct his own investigation regarding

11   this incident.  I think I've covered everybody.  So each

12   of these witnesses are certainly -- the majority are

13   percipient witnesses, there's a small segment that are

14   damages witnesses, and the remainder are also relevant

15   because of any investigation that was conducted by the

16   deceased's husband.

17           THE COURT:  Now, who did you say you weren't

18   going to call?

19           MR. STOCKWELL-ALPERT:  I'm not going to call

20   Gabriel, Domingas's husband.

21           MR. KEEFE:  Ribaldo.

22           MR. STOCKWELL-ALPERT:  He would not have

23   anything to add to what Domingas would put in.

24           THE COURT:  Okay.  So do you want to drop him

25   from the people you have to depose?

1      MR. OUELLETTE:  He's the father of the

2  diseased.  I think he's one of the more important

3  damages witnesses.

4      THE COURT:  I think they're saying they're not

5  going to call him as a witness.  If they tell me that

6  and then they try to call him, I'm going to say that

7  "You can't call him because you represented that you

8  weren't going to call him and as a result of that the

9  deposition wasn't taken," and it will be in the

10  transcript.

11      Do you still need or want to --

12      MS. LITSAS:  Can we think about that, your

13  Honor?

14      THE COURT:  No, because I'm going to -- look,

15  as soon as I let you out of my sight, if I don't give

16  you very specific orders, this is going to go off track

17  again.  So I'm going to tell you who you can depose and

18  who you can --

19      MS. LITSAS:  Okay.  If he's not going to call

20  Gabriel Ribaldo, then we'll agree to not depose him.

21      THE COURT:  Okay.  We'll put that in the

22  order.  It's been represented that Gabriel Ribaldo will

23  not be called by the plaintiff and therefore it's --

24  therefore, in reliance on that representation, the

25  defendants have agreed not to take Ribaldo's

```
1    deposition.

2         And how long do you think each of these

3    depositions is going to take?

4              MS. LITSAS:  Well, I believe that some of them

5    may -- I've been informed that some of them may not last

6    very long because two of the witnesses, Luis Carlvalho

7    and Maria DaRosa, may, in fact, take their Fifth

8    Amendment.  So I've scheduled these depositions

9    basically -- you know, I've scheduled two or three in

10   one day, so I anticipate two or three hours.  And

11   Domingas DePina is the exception, of course, because she

12   is essentially the witness for the -- on the damages

13   case for the plaintiff.

14             THE COURT:  All right.  So you think you need

15   how many days of depositions, about three or four?

16             MS. LITSAS:  Well, I'd say maybe five days of

17   depositions, just to be on the safe side, because James

18   Nicholas, for example, is a New Hampshire resident, so

19   we have to travel to New Hampshire to conduct his

20   deposition.

21             THE COURT:  Okay.  I'm just trying to figure

22   it out.  And which of these people failed to appear in

23   response to --

24             MS. LITSAS:  To a subpoena?

25             THE COURT:  Yes.
```

1          MS. LITSAS:  Travo Carter.  Carlos Fernandes.

2    Luis Carlvalho.  Maria DaRosa.  And Brima Wurie,

3    although we know he failed to appear because he was

4    incarcerated.

5          MR. STOCKWELL-ALPERT:  Your Honor --

6          THE COURT:  Do you want to file a motion to

7    compel and tell me what dates you want them to appear?

8          MS. LITSAS:  Sure, I can do that.

9          THE COURT:  How quickly can you do that?

10         MS. LITSAS:  I can do that by the end of the

11   week.

12         THE COURT:  Okay, by 12:00 noon on Friday the

13   21st.

14      Now, is there going to be any opposition to that?

15         MR. STOCKWELL-ALPERT:  Yes, there would be an

16   opposition to a couple of the depositions, but certainly

17   not all of them.

18         THE COURT:  Why?

19         MR. STOCKWELL-ALPERT:  First of all, Luis

20   Carlvalho and Maria DaRosa, I mean, they may well come

21   in and take the Fifth.

22         THE COURT:  Well -- and in a civil case,

23   that's admissible.

24         MR. STOCKWELL-ALPERT:  Right.  Of course.

25   These people went to the grand jury.  They testified at

1    the grand jury.  They gave statements to the police way

2    back at the beginning.  I don't see any relevance or any

3    purpose for a deposition.

4               THE COURT:  Do you plan to call them?

5               MR. STOCKWELL-ALPERT:  No, absolutely not.

6               THE COURT:  But they may want to call them.

7    They can take their deposition.  I mean, they just

8    failed to appear, they didn't --

9               MR. STOCKWELL-ALPERT:  Right.

10              THE COURT:  -- they didn't move to quash.

11         Do you all got your calendars?  Why don't you just

12    put a week aside to do the depositions in January and

13    then the defendant will have had her -- the defendants

14    will have had their depositions and then we can talk

15    about plaintiffs.

16              MS. LITSAS:  That sounds excellent, your

17    Honor.

18              (Pause.)

19              THE COURT:  Mr. Keefe's looking at his

20    schedule.  I know he would like to be there, and I'm not

21    saying he can't be there, but he doesn't represent a

22    plaintiff as far as I know, so I'm not going to sculpt

23    this around your schedule.

24              MR. KEEFE:  No, no, we can make it, your

25    Honor.

1          THE COURT:  All right.  It's going to take you

2     a little -- okay.  What week do you want?

3          MR. KEEFE:  The week of the 28th.

4          THE COURT:  Why put it off that far?

5          MR. STOCKWELL-ALPERT:  I'm good with the week

6     of the 14th.  I think it's January 14th?

7          THE COURT:  Yes, the 14th.

8          MR. STOCKWELL-ALPERT:  And whatever I have to

9     clear, I'll clear.

10          THE COURT:  Okay.

11          MS. LITSAS:  The week of the 14th works for

12     me, your Honor.

13          THE COURT:  All right.  Well, you give me a

14     motion and a proposed order, tell me when and where you

15     want each of them to appear, and I'll enter the order,

16     the week of the 14th.

17          MS. LITSAS:  Excellent.

18          THE COURT:  All right.  And then who does the

19     plaintiff want to depose?

20          MR. STOCKWELL-ALPERT:  The plaintiff is going

21     to depose Thomas Taylor, who is the person who shot, and

22     there's officer --

23          MS. LITSAS:  Paillant.

24          MR. STOCKWELL-ALPERT:  Okay.  Paillant.  Who

25     was the one who allegedly was hit by the vehicle.  And

1    the two police officers -- and I have to go back and

2    look at the incident report, but the two police officers

3    who were following behind their vehicle at a slow rate

4    of speed.

5              THE COURT:  And what are their names?

6              MR. STOCKWELL-ALPERT:  I don't recollect right

7    now.

8              MR. OUELLETTE:  Deb Flaherty and --

9              MS. LITSAS:  Robert Conley.

10             MR. OUELLETTE:  Right.

11             MR. STOCKWELL-ALPERT:  Right.  And we're going

12   to depose the ballistics, the person who conducted the

13   ballistics examination.

14             THE COURT:  And who is that?

15             MR. STOCKWELL-ALPERT:  I don't recollect.  Do

16   we have that?

17             MS. LITSAS:  Sergeant Duggan or Lieutenant

18   Harrington.

19             MR. STOCKWELL-ALPERT:  Right.

20             THE COURT:  Well, which one of them?

21             MR. STOCKWELL-ALPERT:  Well, I'm going to have

22   both of them because one of them actually oversaw the

23   whole investigation, which was Sergeant Duggan, I

24   believe.  So we're going to be deposing the one who

25   oversaw the whole weapons discharge investigation and

1   then the one who did the ballistics examination of how
2   the bullets hit the car.  And then we have a couple of
3   basically document depositions.  Apparently the injured
4   officer filed a claim against the owner of the vehicle
5   for personal injury and we are going to get that
6   insurance file, okay, to find out what exactly was the
7   injury.
8              THE COURT:  What's the insurance company?
9              MR. STOCKWELL-ALPERT:  Do you recall the
10  insurance company?
11             MR. DeMIRANDA:  I don't recollect right now.
12             MR. STOCKWELL-ALPERT:  I mean, Manny Pires
13  basically has that information.
14             MS. LITSAS:  Your Honor, we would argue how
15  that information is not relevant, the fact that he
16  obtained Worker's Compensation.
17             THE COURT:  No, but if he made statements to
18  the insurance company, it would be relevant.  They might
19  be inconsistent with the deposition testimony.
20             MR. STOCKWELL-ALPERT:  And, in fact, he filed
21  a Worker's Comp. claim as well as a personal injury
22  claim, and so we're really trying to get both of those
23  files.
24             THE COURT:  We're talking here about
25  discovery.  Whether he gets something admissible is a

```
 1   different question.
 2            MR. STOCKWELL-ALPERT:  Right.  And then
 3   there's also the hospital records because apparently he
 4   went to the hospital.  So we're going to get the
 5   hospital records.  So those are the three document
 6   depositions.
 7            THE COURT:  Well, the insurance company, the
 8   hospital, and what's the third?
 9            MR. STOCKWELL-ALPERT:  Worker's Comp.  The
10   insurance company is auto insurance.
11            THE COURT:  All right.
12            MR. STOCKWELL-ALPERT:  And I believe that
13   would sum it up.
14            THE COURT:  All right.  So that's 1, 2, 3, 4,
15   5, 6, 7, 8, 9, 10.  But since you haven't done anything
16   in a year and a half, I really wonder whether you're
17   going to do anything in the next three months.
18            MR. STOCKWELL-ALPERT:  No, everybody is on
19   board now.
20            THE COURT:  All right.  So when do you want to
21   take your depositions?
22            MR. STOCKWELL-ALPERT:  I can take my
23   depositions two weeks after their depositions or
24   sometime in February.  I'll clear my docket, okay, to do
25   this.  I'm serious about moving this case.
```

1    MR. KEEFE:  The week of the 28th would be two

2  weeks afterwards.

3    THE COURT:  The week of the 28th, does that

4  work?

5    MR. KEEFE:  Yeah.

6    MS. LITSAS:  That does work for me, your

7  Honor.  The only concern I have is with some of the

8  officers and their schedules.  It's very difficult to

9  try to coordinate that.  So we would just like some

10  flexibility with that.

11    THE COURT:  Well, you've got five weeks'

12  notice.  They can arrange their schedules.  No, they

13  have to do this.  They have to do this.

14    MS. LITSAS:  Okay.

15    THE COURT:  So let's just do it.

16    MS. LITSAS:  Okay.

17    THE COURT:  I'm not going to let you come back

18  and say --

19    MS. LITSAS:  Oh, I understand.

20    THE COURT:  All right.  Well, the defendant

21  can take up to ten depositions of the people or

22  organizations that have been named beginning January

23  28th.  And is the week sufficient to complete them all?

24    MR. KEEFE:  I think we'll wrap them up in a

25  couple of days, your Honor.

```
 1              THE COURT:  Right.  So they're to be completed

 2    by January 31st.

 3              MR. STOCKWELL-ALPERT:  That's only four days?

 4              MS. LITSAS:  You meant the plaintiffs.

 5              THE COURT:  I meant the plaintiffs.  Did I say

 6    the defendants?

 7              MS. LITSAS:  Yes.

 8              THE COURT:  I'm sorry.  All right.  The

 9    defendants' depositions of the individuals named are

10    going to be taken from January 14th to January 18th.

11    the plaintiffs' depositions, limited to the people

12    named, are going to be taken January 28th to 31st.

13              MR. STOCKWELL-ALPERT:  That's four days.  Can

14    we have five?

15              THE COURT:  Oh, yes, it is.  It is.  You can

16    have until February 1st.

17              MR. STOCKWELL-ALPERT:  You know, just most

18    respectfully, Thomas Taylor is like the key witness and

19    we may want more --

20              THE COURT:  I gave it to you.  Make sure you

21    leave enough time for him.

22          All right.  Then you haven't designated experts.

23    And the plaintiff has to go first and provide the

24    information required by the pertinent part of Rule 26.

25    Are you going to designate an expert?
```

1      MR. STOCKWELL-ALPERT:  Yes, we have started

2   discussions with two different experts.  We're going to

3   have a vocational and economic expert basically to

4   testify about what she's earned, this and that, what her

5   skills were and so on for her life, and that would be

6   Dana Hewins, H-E-W-I-N-S.  I haven't spoken to him yet,

7   so it's not caste in concrete.

8      THE COURT:  And who is the other expert?

9      MR. STOCKWELL-ALPERT:  The other would be

10  basically the one who comes in and testifies about, you

11  know, complaints against the City and about customs and

12  policy --

13     THE COURT:  All right.  But if you're going to

14  complete discovery in three months, you're going to have

15  to -- because we've got to leave some time for possible

16  expert depositions, so what about --

17     MR. STOCKWELL-ALPERT:  I'm getting to --

18     THE COURT:  Let me finish.  Let me finish.

19     MR. STOCKWELL-ALPERT:  Yes.

20     THE COURT:  You're going to make Mr. Keefe

21  think that he can get away with this, too.  He's

22  wondering when I got so patient.  I can tell what's

23  going through his head.

24            (Laughter.)

25     THE COURT:  You're going to have to -- we're

1  going to issue an order, but it's Rule 26.

2      The plaintiff shall, by February 8, designate

3  experts and disclose the information required by Federal

4  Rule of Civil Procedure 26(a)(2) concerning each expert

5  and then the defendant will need to do the same by March

6  15th -- March 14th.  And I'll actually give you a little

7  more time than you asked me for, because if you want to

8  take a deposition of any expert, the deposition shall be

9  taken by April 11th.  And then again, you're going to,

10  by April 18, confer and file a report, each of you, both

11  sides, file a report as to the prospects for settlement

12  and whether either party feels there's a proper basis

13  for filing a motion for summary judgment.

14      What's the date I just gave you for that?

15          THE CLERK:  April 18th.

16          THE COURT:  And I'm going to see you at 4:00

17  on April 24th to talk about settlement and summary

18  judgment.

19      Now, you might -- well, the defendants have

20  already done this, so we can't really talk about summary

21  judgment because we don't know what the evidence is

22  since discovery is very far from complete, but, you

23  know, they cite a bunch of cases, some of them for

24  familiar propositions, so --

25      Have you had any discussions about whether this

```
 1    case can be settled?
 2            MR. STOCKWELL-ALPERT:  It was scheduled for
 3    mediation and then the City decided that they didn't
 4    want to go through with it and that was the last
 5    discussion of mediation.
 6            THE COURT:  Well, that's fine.
 7            MS. LITSAS:  The case law and the evidence,
 8    your Honor, we're really not in a position to make that
 9    --
10            THE COURT:  No, that's reasonable.  The idea
11    -- the reason I tell you to discuss settlement at the
12    end of discovery is that you know what the evidence is.
13    But the next time you really need to do this.  You're
14    going to be spending some time together so, you know,
15    see what you can do.  Somebody is dead.  Maybe it's just
16    unfortunate, but on the other hand -- you know, just
17    see.
18        But then if I authorize motions for summary
19    judgment -- and I'll change this, but if there are, you
20    know, just disputed facts, then when do I have them
21    coming in?  April 24th?
22            THE CLERK:  Yeah.
23            THE COURT:  We'll have a pretrial conference
24    May 15th and we'll go to trial on May 27th.
25            MR. STOCKWELL-ALPERT:  May I ask one thing?
```

1           THE COURT:  Sure.

2           MR. STOCKWELL-ALPERT:  Could we roll back that

3    4:00 to 3:00?  I have significant transportation issues.

4           THE COURT:  Okay.  What day?

5           THE CLERK:  The 24th.

6           THE COURT:  Okay.  Okay.

7           MR. STOCKWELL-ALPERT:  I would really

8    appreciate that.

9           THE COURT:  Okay.  All right.  Mr. O'Leary

10   will have to remind me to put that at 3:00.

11          MS. LITSAS:  Your Honor, I'm a little confused

12   on the -- if you authorize summary judgment motions --

13          THE COURT:  Then I'm going to change the

14   pretrial conference and the trial dates.

15          MS. LITSAS:  Okay.  So we're not preparing

16   summary judgment motions and trial at the same time?

17          THE COURT:  No.  No.  But if it turns out that

18   you look at it and you see there are disputed material

19   facts and that this case is going to have to be tried,

20   then that's the schedule it will be tried on.

21          MS. LITSAS:  Okay.

22          THE COURT:  If you come and tell me again

23   "We'd like to move for summary judgment," and do just

24   what you did this time, you know, give me a feel for it

25   so I see there's a colorable basis, then I'll say,

```
 1    "Okay, you can file for summary judgment.  We're not
 2    going to trial at the end of May.  Here's the schedule
 3    for summary judgment."
 4              MS. LITSAS:  Okay.  And I'll make sure I'll
 5    single space it this time.
 6              THE COURT:  Okay.
 7              MR. McCAULL:  Your Honor, any chance we can go
 8    to the first week of June for trial?
 9              THE COURT:  Not as of now.
10              MS. LITSAS:  The other outstanding motions,
11    your Honor --
12              THE COURT:  Oh, yeah, the CORI motion.
13              MS. LITSAS:  The CORI motion, yes.
14              THE COURT:  Yeah, there's no objection to
15    that.  That's allowed, too.  With regard to people who
16    are going to be witnesses, it bears on their
17    credibility.  I think you also asked for the decedent's
18    CORI and I assume that's relevant to damages
19    potentially, right?
20              MS. LITSAS:  Yes.
21              THE COURT:  Okay.  We'll enter an order.  You
22    can have all of that.
23              MS. LITSAS:  I have a proposed order.
24              THE COURT:  Oh, you have a proposed order?
25    Okay.
```

1        (Hands over.)

2            THE COURT:  Is it in there?

3            MS. LITSAS:  Yup, right here, your Honor.

4    Sorry.  It's not stapled.

5            THE COURT:  That's all right.

6            (Signs.)

7            THE COURT:  Let's see.  You also -- just so

8    you can get going, because your time is short, you have

9    the motion to take the deposition and that's allowed.

10   (Signs.)

11       All right.  Are those all the motions?

12           MS. LITSAS:  Yes, your Honor.  Just two other

13   points.  We have yet to receive written discovery from

14   the plaintiff, their answers to interrogatories and

15   document production.  If --

16           THE COURT:  You need it for the --

17           MS. LITSAS:  If there's information that is

18   new or --

19           THE COURT:  You need it for the depositions?

20           MS. LITSAS:  That's right.

21           MR. STOCKWELL-ALPERT:  Two weeks, they'll have

22   it.

23           THE COURT:  Yes.  If they don't have it, I may

24   dismiss the case.

25           MR. STOCKWELL-ALPERT:  Three weeks.

1          THE COURT:  No, not three weeks.  They've got

2    a deposition January 14th.  They want to read it.

3          MR. STOCKWELL-ALPERT:  Right.

4          MS. LITSAS:  And, your Honor, we would just

5    reserve the right to call in to -- if we need to add

6    other witnesses to our deposition list, I'll just file a

7    motion.

8          THE COURT:  You'll have to file a motion.  You

9    have a right to file a motion.  You don't have a right

10   to add people.  But that's fine.

11       You're to -- we'll say by January 3rd, I'm

12   ordering -- what do you have, interrogatories?

13         MS. LITSAS:  Interrogatories and requests for

14   production of documents.

15         THE COURT:  All right.  The plaintiff is to

16   respond to the pending interrogatories and pending

17   request for production of documents by January 3, 2008

18   and it needs to be everything.

19         MS. LITSAS:  The underlying probate case

20   involving the decedent's estate, apparently we've just

21   learned that the material is impounded in the probate

22   court, so we do not have access to it.  What are your

23   recommendations as far as accessing that material,

24   should we seek an order from you or --

25         THE COURT:  Well, let me ask you this.

1          MS. LITSAS:  He's refused to provide that

2     information to us.

3          MR. STOCKWELL-ALPERT:  I didn't refuse.  What

4     I said was that I'm not going to have the executor or

5     the administrator of the estate go to court and try to

6     unimpound these documents without them coming in and

7     making some sort of showing that the probate court

8     documents, which have been impounded for particular

9     reasons, are relevant to anything.

10          THE COURT:  What's in the probate court

11     documents, potentially?

12          MS. LITSAS:  Apparently there's information

13     regarding some of the witnesses that may be testifying,

14     Mr. Carlos Cepeda.  There's information that has been

15     discussed because there was a child custody dispute or a

16     guardianship dispute over the grandmother of the -- or

17     the mother of the decedent, who is the grandmother, and

18     the father of the child.  Apparently --

19          THE COURT:  What's the relevance?

20          MS. LITSAS:  The relevance is because it goes

21     to damages and Domingas DePina is going to be a witness

22     who is going to testify at the trial on behalf of the

23     decedent.  She's going to talk about her daughter.

24     She's going to talk about her grandchild.  And all of

25     that information has been --

```
1              THE COURT:  Well, who provided the information
2    to the probate court?
3              MS. LITSAS:  Domingas DePina.
4              THE COURT:  Fine.  You can get it from
5    Domingas DePina.  Why do you have to get it from the
6    court?
7              MS. LITSAS:  Because the court --
8              THE COURT:  The fact that it's impounded in
9    the court record doesn't mean that Mr. DePina can't give
10   it to you.  Who represents Mr. DePina?
11             MS. LITSAS:  No one.  I just learned the other
12   day at her deposition that Mr. Stockwell-Alpert is not
13   representing her.
14             MR. STOCKWELL-ALPERT:  I never have
15   represented her.
16             THE COURT:  Oh, DePina is a female.
17             MR. STOCKWELL-ALPERT:  Right.
18             THE COURT:  Well, my point is as follows.  I
19   think if you want to discover something that's in the
20   probate records -- and I don't know who the parties of
21   the probate dispute, you know, the probate matter, are,
22   you'll have to go to the probate court to unseal them.
23             MS. LITSAS:  Okay.
24             THE COURT:  But the fact that something is
25   sealed at the probate court doesn't mean that you can't
```

1    obtain the same information from whoever gave it to the

2    probate court.

3            MS. LITSAS:  I understand that, your Honor.

4            THE COURT:  So, you know, in connection with

5    the subpoena to Mr. -- Miss DePina for the deposition,

6    ask for copies of everything that DePina provided to the

7    probate court.  That's one way to get it.  And then I

8    don't know who else provided information to the probate

9    court.

10           MS. LITSAS:  Certainly any testimony that --

11           THE COURT:  Or you can go into probate court

12   and move to have it unsealed subject to some protective

13   order.  But I don't, A, have a motion before me with a

14   memorandum.  I have questions about my authority to

15   essentially unseal, for limited purposes, records in

16   another court.

17           MS. LITSAS:  I understand, your Honor.

18           THE COURT:  And if I have the authority, I

19   have questions about the propriety of doing it.

20           MS. LITSAS:  Okay.

21           THE COURT:  Now --

22           MR. STOCKWELL-ALPERT:  I have an issue about

23   that, too, as well.

24           THE COURT:  And what is that?

25           MR. STOCKWELL-ALPERT:  And that is that Miss

1  DePina was the guardian of the child after a long and

2  protracted battle and she's not the administrator, and

3  -- she had an attorney representing her and Carlos

4  Cepeda had these attorneys representing him.  It would

5  seem to me that if, in fact, anything was directed to

6  anybody, it would have to be directed to Domingas

7  DePina's attorney who represented her in the probate

8  court who can make the decision, because Domingas DePina

9  gave nothing to anybody.  She was represented by a

10  lawyer who filed all the papers and the relevant

11  documents and things like that in court.  So Domingas

12  DePina has nothing to give with respect to anything.

13  And I would suggest that you have to go to the attorney

14  for Domingas DePina.

15       THE COURT:  You mean take the attorney's

16  deposition?

17       MR. STOCKWELL-ALPERT:  No, go to the attorney

18  and see if the attorney would go along with unsealing

19  the record or anything.  He's got the standing to come

20  in and object to it.

21       THE COURT:  No, I think that he's the

22  witness's agent and anything that you give to an

23  attorney, that it is in the custody and control of the

24  client.

25       MR. STOCKWELL-ALPERT:  So if you're talking

1 about specifically documents and things that she

2 provided him with, that's one thing. If you're trying

3 to get at anything else, there might be work product or

4 anything else in the probate court, that's another

5 matter. And she can certainly inquire of Domingas as to

6 what if any documents did she actually give.

7         THE COURT: She wants to get the documents

8 before the deposition, I assume.

9         MS. LITSAS: And certainly any testimony that

10 was provided in the proceeding that is directly relevant

11 at least for -- well, not just for damages purposes, but

12 also for impeachment purposes.

13         THE COURT: Well, you may need to go to the

14 court for that. I don't know whether the transcripts

15 have been made.

16         MS. LITSAS: Yes. Thank you.

17         THE COURT: But anything in an attorney's

18 possession on behalf of a client is within the client's

19 custody and control. It's not immunized from production

20 because the attorney's holding it. And if there's some

21 work product privilege, then that's something else.

22         MR. STOCKWELL-ALPERT: Well, I guess, your

23 Honor -- and just to not belabor this, but quickly, that

24 if she didn't give him any documents to file and the

25 administrator of the estate has no documents prepared by

1  her --

2          THE COURT: You want to listen to this.

3          MS. LITSAS: Excuse me.

4          THE COURT: Go ahead.

5          MR. STOCKWELL-ALPERT: If she hasn't given any

6  documents to her lawyer and the lawyer simply went ahead

7  and prepared an administration of the estate and an

8  administrator was appointed, then there's no connection

9  between her and anything that you're trying to

10 discover. And it seems that the issue can be simply

11 resolved by making an inquiry as to what if any

12 documents that she provided to her lawyer to the probate

13 court, because everything else is sealed.

14          THE COURT: I don't have a motion in front of

15 me, but I'm telling you that the fact that something's

16 under seal in court doesn't mean it's not discoverable.

17 Somebody might move to quash the subpoena and say, "No,

18 there's a proper basis. It's attorney-client privilege,

19 it's work product." But the fact that it's sealed in

20 court doesn't mean that it can't be -- doesn't

21 automatically mean it can't be produced by the client or

22 her agent.

23      So if you have to come back to me on any of this,

24 that's the understanding I'm going to start with and

25 you'll have to give me some authority for some different

1   proposition.

2        All right.  Now, the past cannot be prologue.  I

3   very rarely conduct a scheduling conference with the

4   court reporter present, but he's present.  He's going to

5   put this on my laptop so that I can pull up the draft

6   even if you don't order it.  And, you know, to the

7   extent that the plaintiff has any influence over the

8   people that the defendants want to depose, you should

9   exert that influence to cause them to come.  Because if

10  they don't give their depositions, the plaintiff is

11  certainly not going to be permitted to call them at

12  trial or at least they're going to say there's a

13  prejudice, they shouldn't be allowed to testify at

14  trial.

15       Similarly, you know, I know these are police

16  officers, but now they've got six weeks' notice.  You

17  can go out and sit in my conference room, decide what

18  dates you prefer for each of the police officers, and

19  put the time aside.  But they have to do it.

20            MS. LITSAS:  Absolutely, your Honor.

21  Absolutely.

22            MR. STOCKWELL-ALPERT:  Judge, we have not done

23  anything to interfere with them trying to get any

24  witness -- we're not calling any of these people and

25  some of them have Fifth Amendment issues.  And I don't

1   think we have any obligation --

2          THE COURT:  No, no, that's fine.  I was

3   thinking about people you might be calling.  No, you

4   don't have an obligation to cause other witnesses to

5   appear.  On the other hand, I'm going to issue an order

6   if they haven't -- just for the people who have failed

7   to obey notices of deposition, so you'll have to

8   describe that to me, to appear.  If they fail to appear

9   and there's a motion to hold them in contempt, I'll have

10  to send the marshals out to get them.

11          MR. STOCKWELL-ALPERT:  So be it.

12          THE COURT:  They have other things to do.

13          MR. STOCKWELL-ALPERT:  Well, I don't want you

14  to have to do that either, but --

15          THE COURT:  No, I'm not saying I do, I'm

16  saying the marshals have other things to do.  No, I can

17  send them out.  It's not a great effort on my part.  And

18  then the marshals will take them and they'll lock them

19  up until they give their deposition.  I'll hold them in

20  civil contempt.  But, you know, unless they like being

21  locked up, they should come for their deposition.

22          MS. LITSAS:  Thank you, your Honor.  We're

23  trying to be as -- we understand that a couple of these

24  witnesses had family emergencies or some type of

25  situations, but other witnesses have just failed to

1    appear.  That's why we held off on that motion to compel
2    to give people in certain circumstances --

3                THE COURT:  Well, I'm afraid their lives are
4    not going to get any less chaotic, so this is the time.
5    And, you know, it's a serious thing, you know, because
6    somebody's killed and it's a serious thing because there
7    are serious allegations against the defendants, and so
8    it's got to be taken seriously and done properly.

9                MS. LITSAS:  I agree, your Honor.

10               THE COURT:  All right.  Now you've got a
11   schedule.  More?

12               MS. LITSAS:  I just wanted to put you on
13   notice of the -- of Shenia Dancy-Stewart, she's the
14   administrator of the estate.  Mr. Stockwell-Alpert did
15   give me the opportunity to speak with her informally.  I
16   haven't yet had the opportunity.  But if for some reason
17   I don't have that -- if she's not cooperative or refuses
18   to talk with me, I would like the opportunity to reserve
19   my right to depose her, since she is the administrator.

20               THE COURT:  Well, at this point you don't have
21   the right, you have to ask me, because I asked you to
22   tell me everybody you've been trying to depose since
23   August of 2006 and you told me.  So the people you told
24   me, you have a right to depose, that week of January
25   14th, but anybody else you're going to have to persuade

```
 1    me should be added.  Okay?
 2              MS. LITSAS:  Will do.  Thank you, your Honor.
 3              MR. STOCKWELL-ALPERT:  Thank you, Judge.
 4              MR. McCAULL:  Thank you, very much.
 5              MS. LITSAS:  Thank you for your time.
 6              (Ends, 2:00 p.m.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3
 4
 5
 6
 7
 8          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,
 9     do hereby certify that the foregoing record is a true
10     and accurate transcription of my stenographic notes
11     before Chief Judge Mark L. Wolf, on December 19, 2007,
12     to the best of my skill and ability.
13
14
15
16
17
18
19
       /s/ Richard H. Romanow
20     _____
       RICHARD H. ROMANOW
21
22
23
24
25
```