UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO. 05-11803-MLW

SHENIA DANCY-STEWART as Administratrix of the Estate of EVELINE BARROS-CEPEDA,
    Plaintiffs,

v.

THOMAS TAYLOR, Jr., and the CITY OF BOSTON,
    Defendants.

## DEFENDANT THOMAS TAYLOR'S REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

The Defendant, Boston Police Officer Thomas Taylor, Jr.("Officer Taylor") hereby submits his Reply Brief to the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment. Officer Taylor incorporates by reference herein his Motion for Summary Judgment, the accompanying Memorandum in Support and any additional arguments that may be raised at a hearing on this matter.

As a general objection to the Plaintiff's Opposition, the Plaintiff fails to identify *material* facts in dispute and disingenuously attempts to contradict facts without the requisite support in the record. See *Defendant's Motion to Strike Plaintiff's Rule 56.1 Statement of Disputed Facts.* Moreover, a review of the Plaintiff's Opposition not only illustrates the Plaintiff's dispositive concessions, but also an absence of proof fatal to the Plaintiff's claims.

---

1

I.  **THE PLAINTIFF'S CONCESSIONS AND INABILITY TO REBUT OFFICER TAYLOR'S QUALIFIED IMMUNITY CLAIM WARRANT AN AWARD OF SUMMARY JUDGMENT ON COUNTS I AND II.**

   A. <u>**The Plaintiff Concedes That Landol Represents The Governing Law Of This Circuit.**</u>

A review of the Plaintiff's Opposition and her critical concessions establish that Officer Taylor is entitled to qualified immunity on the Plaintiff's constitutional claims in Counts I and II. The Plaintiff cannot demonstrate that at the time of the incident, the law was so clearly established that Officer Taylor received the requisite notice that his conduct was unconstitutional.  See <u>Bergeron v. Cabral</u>, 535 F.Supp.2d 204 (D. Mass. 2008), <u>quoting</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 616-617 (1999)("As a rule, a right is 'clearly established' when it is enunciated by a court of controlling authority in the defendant's jurisdiction in a case sufficiently similar in its facts 'that a reasonable officer could not have believed that his actions were lawful'").  In her Opposition, the Plaintiff essentially concedes her failure of proof, stating the following:

> The Plaintiff acknowledges that **<u>she cannot cite any Supreme Court or First Circuit cases with facts materially similar to the facts of the case at bar</u>**.

<u>Plaintiff's Opposition to Defendant's Motion for Summary Judgment</u> at 17 n.3 (hereinafter "Pl. Opp.") (emphasis added).

The Supreme Court and the First Circuit have made it abundantly clear that such a failure is fatal to the Plaintiff's claim because a plaintiff's inability to cite to the requisite governing authority unveils an inability to prove that the law was clearly established at the time of a defendant's conduct.  See <u>Wilson v. Layne</u>, 526 U.S. 603, 616-617 (1999); <u>Brady v. Dill</u>, 187 F.3d 104, 116 (1st Cir. 1999).  Sole reliance on precedent from another circuit is insufficient.

2

Brady, supra at 116.  In Brady, for example, the court explicitly rejected the Plaintiff's reliance on a Fourth Circuit precedent and highlighted the Supreme Court's stringent requirement for law from the controlling jurisdiction:

> The Supreme Court recently held that an asserted right was not clearly established where the plaintiffs were unable to cite 'any cases of *controlling authority in their jurisdiction* at the time of the incident which clearly established the rule on which they [sought] to rely,' and equally failed to 'identif[y] a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'

See Brady v. Dill, 187 F.3d 104, 116 (1st Cir. 1999), citing Wilson v. Layne, 526 U.S. 603, 616-617 (1999) (emphasis added).  Decisions from the United States District Court for the District of Massachusetts reaffirm this fundamental requirement.  See  DeToledo v. County of Suffolk, 379 F.Supp.2d 138, 147, n14. (D. Mass. 2005), quoting Wilson v. Layne, 526 U.S. 603, 616-617 (1999); Hudson v. Maloney, 326 F.Supp.2d 206, 209-210 (D.Mass. 2004), quoting Wilson v. Layne, 526 U.S. 603, 616-617 (1999).

Moreover, the very case which the Plaintiff does recognize as "controlling in this Circuit," see Pl. Opp. at 9,  ---Landol-Rivera v. Cruz, 906 F.2d 791 (1st. Cir. 1990) ---is the very case which establishes that Officer Taylor's conduct would not violate governing constitutional law.  Given Landol, the governing law of this Circuit, and the Plaintiff's concession that no other decision governs, it cannot be said that it was clearly established (1) that Officer Taylor's firearm discharge constituted an actionable seizure of the decedent; or (2) that it was clearly established that such conduct was constitutionally unreasonable.

### B. **Fisher Is Immaterial To This Court's "Clearly Established" Analysis.**

Against this analytical backdrop, the Plaintiff's reliance on the Sixth Circuit's decision in Fisher v. City of Memphis, 234 F.3d 312 (6th Cir. 2000) is off the mark.  Fisher obviously does

not represent a case of "controlling authority" in this jurisdiction and its explicit tension with Landol "falls far short of the 'persuasive authority' that Wilson envisions." Brady, supra at 116. Moreover, even if the Plaintiff could demonstrate a split among the circuits, such a showing only demonstrates further that the law governing Officer Taylor's actions was not clearly established. See Borucki v. Ryan, 827 F.2d 836, 848 (1st Cir. 1987).

### C. Specificity Of The Constitutional Right Is Required.

To the extent that the Plaintiff contends that general Fourth Amendment principles establish that Officer Taylor's conduct was unconstitutional, this argument is unpersuasive. "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine f it was clearly established." Wilson, supra at 616-17 (omitting citation). In the context of Fourth Amendment cases, for example, the Supreme Court has insisted on this specificity and even rejected blanket reliance on its decision in Tennesee v. Garner, 471 U.S. 1 (1984) as having clearly established broad principles that cover cases with obvious clarity. Scott v. Harris, 127 S.Ct. 1769, 1777 (2007).

As the First Circuit has elucidated, "[T]he law must have defined the right in a quite specific manner, and that the announcement of the rule establishing the right must have been unambiguous and widespread, such that the unlawfulness of particular conduct will be apparent ex ante to reasonable public officials." Brady, supra at 116-117, citing Ringuette v. City of Fall River, 146 F.3d 1, 4 (1st Cir. 1998); Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993). Such specificity is required when evaluating a public servant's defense of qualified immunity because such a defense "serves important societal purposes, and it is therefore meant to protect "'all but the plainly incompetent or those who knowingly violate the

4

law.'" Id., citing Malley v. Briggs, 475 U.S. 335, 341 (1986). Certainly, here, it cannot be said that Officer Taylor was plainly incompetent or that he knowingly violated the law.

Given this backdrop. Officer Taylor is entitled to summary judgment. The Plaintiff's proffer is "too slender a reed to ward off a finding of qualified immunity." Brady, supra at 116-117.

## II.     THE PLAINTIFF HAS FAILED TO ADDUCE A GENUINE ISSUE OF MATERIAL FACT REGARDING THE ALLEGED SEIZURE OF THE *DECEDENT*.

A review of the Plaintiff's Opposition and Response to Defendants' Local Rule 56.1 Statement of Facts and Plaintiff's Statement of Additional Undisputed Material Facts establishes that the Plaintiff has failed to adduce any evidence that Officer Taylor intended to specifically seize the decedent. It is a well-established maxim that summary judgment is appropriate when the Plaintiff fails to show sufficient evidence to establish an essential element of his case on which he bears the burden of proof. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

Here, the Plaintiff has conspicuously failed to demonstrate even a scintilla of evidence that Officer Taylor intended to seize the decedent. Her Opposition's legal analysis also falls short because she improperly conducts a reasonableness inquiry rather than the seizure analysis mandated by Landol. Pl. Opp. at 8-11. By doing so, the Plaintiff puts the cart before the horse. It is axiomatic that before this Court can evaluate reasonableness, it must first conclude that the decedent was in fact seized. See Landol-Rivera v. Cruz, 906 F.2d 791 (1st. Cir. 1990).

5

Strikingly, while the Plaintiff concedes that the First Circuit's decision in Landol-Rivera v. Cruz, 906 F.2d 791 (1st. Cir. 1990) "is controlling in this Circuit," see Pl. Opp. at 9, her Opposition is devoid of any substantive application of Landol's principles governing seizure. The Plaintiff, for example, neither argues nor adduces any facts to establish that Officer Taylor "attempt[ed] to gain control of the [decedent]," that "the decedent was "the direct object of the police intervention," that the decedent was "the object of the police bullet that struck [her]," or that there was any evidence of Officer Taylor's "intentional acquisition of physical control" of the decedent.  The Plaintiff's deafening silence in this regard only reinforces the inevitable conclusion that no seizure occurred in this case.

This silence becomes even more deafening in the wake of the Plaintiff's efforts to highlight factual distinctions from Landol.  Such factual differences bear no relevance on a seizure analysis as their materiality relates to a reasonableness inquiry.  By referencing them, the Plaintiff attempts to obfuscate the Court from Landol's clear holding, which requires a determination that the decedent was not seized under the Fourth Amendment.  Moreover, Landol cannot be inapposite because the dispositive facts in Landol directly parallel the facts in the case at bar; just as in Landol, the decedent was not the direct object of police intervention nor was she the intended object of the police bullet.

The Plaintiff's claim also fails in any event because she concedes that Officer Taylor did not see the decedent prior to the incident.  See Pl. Opp..  Of course, Officer Taylor could not have intended to direct his restraint against an individual he could not see.  See Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir.1991).

Summary judgment is therefore warranted on Counts I and II.

6

**III.    THE PLAINTIFF'S OPPOSITION IMPROPERLY ENGAGES IN MONDAY-MORNING QUARTERBACKING AND ASKS THE WRONG QUESTION REGARDING THE REASONABLENESS OF OFFICER TAYLOR'S ACTIONS.**

In an effort to distract the Court from the unavoidable conclusion that Officer Taylor's actions were objectively reasonable under the circumstances, the Plaintiff dedicates a substantial bulk of her Opposition to minimizing the undisputed fact that Officer Taylor observed the Wurie vehicle come into contact with Officer Paillant, thereby placing Officer Paillant in immediate physical jeopardy. See Pl. Opp. at 11-17; Defendant's Motion to Strike at 2. Given the Wurie vehicle's collision with Officer Paillant and the attendant circumstances, Officer Taylor had more than sufficient probable cause "to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others." Garner, 471 U.S. at 11. The Plaintiff's attempt to employ a more exacting reasonable doubt standard is therefore misplaced. The Plaintiff also misses the mark when she fails to recognize that while the facts may be viewed in the light most favorable to her, they must also be simultaneously viewed from the perspective of a reasonable officer. Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695 (1st Cir.1994). Under these standards, it cannot be said that Officer Taylor's actions were objectively unreasonable.

To the extent that the Plaintiff proposes alternatives to Officer Taylor's actions that evening, the Plaintiff's analysis is grossly misplaced. The Plaintiff invites this Court to engage in Monday-morning quarterbacking ---with the benefit of hindsight---a type of analysis the Supreme Court expressly prohibits. See Graham, 490 U.S. at 397 (reasonableness cannot be judged "with the 20/20 vision of hindsight" but from the perspective of the reasonable officer on scene). "[C]ourts in this Circuit do not 'second-guess' officers, even if, in retrospect, a situation could have been handled differently." See Natal v. City of Bedford, 37 F. Supp.2d 74 (D. Mass. 1999) (allowing summary judgment in defendant officer's favor); citing St. Hilaire v. City of

7

Laconia, 71 F.3d 20, 28 (1st Cir.1995); Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695 (1st Cir.1994). Moreover, "[i]n tense, uncertain, and rapidly evolving situations, officers are insulated from judicial second-guessing." Medeiros v. Town of Dracut, 21 F.Supp.2d 82, 87 (D. Mass.1998), citing Graham, 490 U.S. at 396.  "Omniscience is not the presumed mind-set with which an objectively reasonable police officer approaches life-endangering situations." Hegarty, 53 F.3d 1379 n.11.  "[Taylor] is entitled to prevail unless no reasonable police officer could have believed that [Wurie] posed a threat." See Natal v. City of Bedford, 37 F. Supp.2d 74 (D. Mass. 1999).

Even putting aside the fact that from Officer Taylor's perspective, the Wurie vehicle posed an *actual* threat, the record establishes that the Wurie vehicle, at the very minimum, posed a potential threat to Officer Paillant and to the public.  Such a potential threat provided sufficient circumstances warranting Officer Taylor's use of deadly force.  This Court cannot ask "an officer to wait while a potential threat becomes an actual threat before defending himself or fellow officers." Medeiros v. Town of Dracut, 21 F.Supp.2d 82, 88 (1998).  Similarly, the court cannot second guess an officer's split-second decision because "the Supreme Court's standard of reasonableness is comparatively generous to the police in cases where *potential* danger, emergency conditions or other exigent circumstances are present." Roy, 42 F.3d at 695 (emphasis added).  Even in "close cases," which this case admittedly is not, the Supreme Court "surround[s] . . . police [officers] who make these on-the-spot choices in dangerous situations with *a fairly wide zone of protection . . . .*" Id. (emphasis added).

That zone of protection undeniably insulates Officer Taylor's actions the night of the incident, especially where there is no dispute regarding the material circumstances that confronted him.  It is undisputed that the following events unfolded in matter of seconds: (1)

8

Officer Paillant attempted to halt the Wurie vehicle; (2) the vehicle failed not only to stop but also continued in the close direction of Officer Paillant; (3) the front of vehicle then made contact with Officer Paillant's body, thereby rendering him briefly out of Officer Taylor's line of sight; and (4) at that point, Officer Taylor discharged his firearm. Officer Taylor's split second decision under such exigent circumstances cannot be said to be constitutionally unreasonable.

The absence of any firearm discharge by any other officer at the scene does not alter this conclusion. The evidence incontrovertibly establishes that none of these officers –Paillant, Flaherty and Connolly --- were faced with the same circumstances confronting Officer Taylor. None of these officers had the vantage point Officer Taylor did. In fact, Officers Flaherty and Connolly were traveling inside a police cruiser at the time of the incident, while Paillant was facing the vehicle head-on.

As for the Plaintiff's reliance on the BPD's Rule 303, it is also off the mark and bears no relevance to the Court's reasonableness analysis. Whether or not Officer Taylor violated BPD's internal rule or regulation of discipline is immaterial to the determination of whether he committed an act of constitutional dimension. Furthermore, evidence of such a regulation is not only irrelevant, but also inadmissible at trial. See Defendants' Motion to Strike; see also Hochen v. Bobst Group, Inc., 193 F.R.D. 22, 24 (D. Mass. 2000); see also Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012 (1984) (concluding, inter alia, that violation of a regulation does not preclude finding that officer's action were objectively reasonable under qualified immunity analysis); Soto v. Flores, 103 F.3d 1056, 1064 (1st Cir 1997).

Accordingly, Officer Taylor is entitled to summary judgment on Counts I and II.

**IV.    SUMMARY JUDGMENT IS ALSO WARRANTED ON PLAINTIFF'S STATE LAW CLAIMS FOR WRONGFUL DEATH (COUNT VI) AND "SURVIVAL ACTION" (COUNT VI) AGAINST TAYLOR BECAUSE THERE IS NO VIABLE UNDERLYING TORT ACTION TO SUPPORT THESE CLAIMS.**

The Plaintiff, in her opposition, concedes that in order for either of her state law claims,: 1) wrongful death, and 2) her "Survival Action" to be viable, she must demonstrate that Taylor committed an underlying intentional tort against the decedent. The Plaintiff now bases both of these claims on the underlying intentional tort of battery. Additionally, the Plaintiff concedes that Officer Taylor did not observe the decedent or any other passengers in the vehicle when he fired and that it was his sole intention to disable the driver, not injure any unknown passengers. The Plaintiff therefore relies solely on the theory of transferred intent to support her claim of battery to sustain her state law claims.

This theory, however, fails for several reasons. The first of which is that there is not a single case decided by any Massachusetts state court or any federal court within the First Circuit which has ever held that the theory of transferred intent applies in the civil context with regard to civil battery or any other tort. In support of her transferred intent argument, Plaintiff cites only a single case and the Restatement (Second) of Torts § 16, comment b. The sole case Plaintiff cites, Sebego, Inc. involves a criminal RICO prosecution and deals only with the application of transferred intent in the criminal setting. Sebego, Inc. v. Beazer East, Inc., 18 F.Supp.2d 70, 84 (D.Mass. 1998). This case is therefore inapplicable to the Plaintiff's civil battery theory. As for the Restatement (Second) of Torts § 16, comment b, there is absolutely no case law which would suggest that Massachusetts has adopted this section of the Restatement or this specific comment within the section. The Plaintiff's transferred intent argument is therefore, entirely unsupported by existing law.

Additionally, the Plaintiff's state law claims also fail for the same reason her Fourth Amendment claim fails. As discussed supra, Officer Taylor acted reasonably in his use of deadly force. Civil battery requires proof of an "intentional and unjustified use of force upon the person of another." Commonwealth v. McCan, 277 Mass. 199, 203, 178 N.E. 633, 634 (1932) (citations omitted). The First Circuit applies essentially the same reasonableness test in determining whether force was justified for purposes of proving civil battery as it does in determining whether a seizure was unreasonable for Fourth Amendment purposes. See Jesionowski v. Beck, 937 F.Supp. 95, 105 (D. Mass. 1996), citing Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991). "The identical reasoning which constrain[s] our determination that [an] officer's use of force [is] objectively reasonable in fourth amendment terms, under Graham v. Connor, [490 U.S. 386, 109 S.Ct. 1865 (1989)] controls the "reasonableness" determination required on [plaintiff's] common law claims for assault and battery. Dean, 924 F.2d at 369. "[I]n other words, the plaintiff's assault and battery claims will rise or fall in the same manner as h[er] Fourth Amendment claims." Jesionowski, 937 F.Supp. at 105, citing Dean, 924 F.2d at 369. Given the fall of the Plaintiff's Fourth Amendment claims on objectively reasonable grounds, the Plaintiff's state law claims also falter.

## V.     CONCLUSION

Based on the foregoing reasons, Officer Taylor requests that summary judgment enter in his favor on all counts of the Plaintiff's Complaint with prejudice.

**DEFENDANT REQUESTS ORAL ARGUMENT**

[signature next page]

    Respectfully submitted,
DEFENDANTS, THOMAS TAYLOR, JR. AND CITY OF BOSTON,

By their attorneys:

/s/ Helen G. Litsas
_____
Helen G. Litsas #644848
Special Assistant Corporation Counsel
Hollett Building
38 Main Street
Saugus, MA 01906
(781) 231-8090


<u>/s/ Evan Ouellette</u>
Evan C. Ouellette, BBO # 655934
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617)635-4048


**CERTIFICATE OF SERVICE**

I, Helen G. Litsas, hereby certify that on this date I served a copy of the foregoing documents upon lead plaintiff's counsel, Andrew Stockwell-Alpert, by electronic filing and by postage prepaid, first class, U.S. Mail.

| | |
|---|---|
| 7/25/08 | /s/ Helen G. Litsas |
| Date | Helen G. Litsas |