UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11803-MLW

SHENIA DANCY-STEWART as
Administratrix of the Estate of EVELINE
BARROS-CEPEDA,
    Plaintiffs,

v.

THOMAS TAYLOR, Jr., and the CITY
OF BOSTON,
    Defendants.

**DEFENDANT THOMAS TAYLOR'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S RULE 56.1 STATEMENT OF MATERIAL FACTS**

Now comes the Defendant, Thomas Taylor, ("Officer Taylor"), and hereby moves this Honorable Court to strike portions of Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Facts and Plaintiff's Statement Of Additional Undisputed Material Facts ("Plaintiff's Response"). As grounds therefore, Officer Taylor states that Plaintiff's purported response fails to comply with Rule 56.1 because it does not identify any material facts in actual dispute.

**I.   PLAINTIFF HAS FAILED TO COMPLY WITH L.R. 56.1.**

    **A.   The Plaintiff's Alleged Disputes Of Facts Do Not Create A Genuine Issue Of Material Fact And Should Be Stricken.**

As the opposing party, the Plaintiff has an obligation to "state what specific facts are disputed and [therefore] prevent summary judgment." Vasapolli v. Rostoff, 864 F. Supp. 215, 218 (D. Mass. 1993), aff'd 39 F.3d 27 (1st Cir. 1994). The existence of a factual dispute does not end the inquiry, however, because in summary judgment terms, the disputed fact must be material. Andersen v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be material, the fact

must have "the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). Additionally, to establish a "genuine" issue, even when the evidence relevant to the issue is viewed in the light most flattering to the non-movant, the fact must be "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). The Plaintiff, however, has failed to satisfy these requirements.

The Plaintiff cannot demonstrate the existence of any genuine issue of material fact in dispute. The Plaintiff contends that numerous material facts are in controversy, but a closer examination of the summary judgment record reveals that these facts are inaccurate or immaterial to the issues at bar.

In Paragraphs 44-47 of the Plaintiff's Response, the Plaintiff contends that the Defendants' Statement of Facts' Paragraphs 44 through 47 are disputed to the extent that "Wurie testified that he did not hit Paillant." See Pl. Response at 6. No such actual dispute exists as even the Plaintiff's Opposition Memorandum admits that Wurie's vehicle struck Officer Paillant. See Pl. Opp. at 3, 4, 10, 13, 16, 19, 20. Moreover, Wurie concedes during his deposition that his vehicle did indeed come into contact with Officer Paillant and admits during his plea colloquy on his charge of assault and battery by means of a dangerous weapon ("ABDW"), to wit a motor vehicle (M.G.L. c. 265, §15A), that he struck Officer Paillant. Additionally, multiple other witnesses testified that they observed the vehicle strike Officer Paillant. See Defendants' Statement of Facts ("Defs.' SOF") at ¶ 44 (citing Exhibit B at 45:24; 46:1-6; Exhibit C at 70:19-24; 73:1-3; Exhibit D at 110:19-24, 111:1-12; Exhibit G at 92:3-24;93:1-14; Exhibit H at 73:5-8; Exhibit I at 43:22-24;44:1-4;16-23; 46:7-18; Exhibit L; Exhibit M at 15-27); and ¶ 89.

The Plaintiff attempts to dispute this fact by incorrectly setting forth the elements necessary to support a conviction for the offense of ABDW, to wit a motor vehicle. The Plaintiff incorrectly claims that the Commonwealth need only prove an "intentional, unjustified touching, however slight, by means of a dangerous weapon." Pl. Opp. at 14. This standard is inapplicable, however, because it applies when the weapon used in the battery is classified by law as a *per se dangerous weapon* (such as certain knives or firearms) and under Massachusetts law, a motor vehicle is not a *per se* dangerous weapon. Commonwealth v. Welch, 16 Mass. App. Ct. 271, 276 (1983), citing Commonwealth v. Appleby, 380 Mass. 296, 307 (1980). When a motor vehicle is the weapon involved, the Commonwealth must prove that it was used in a manner "capable of producing serious bodily harm" to the victim. Therefore, Wurie's plea under M.G.L. c. 265, §15A, implicitly involved not only an admission that Wurie struck Paillant with the vehicle but specifically, that Wurie used the vehicle in a manner "capable of producing serious bodily harm" to Paillant. Commonwealth v. Tevlin, 433 Mass. 305, 310 (2001). Wurie thereby conclusively admitted that his driving threatened Paillant with serious bodily harm.

Against this backdrop, the Plaintiff cannot prove that this fact is "sufficiently open-ended to permit a rational fact-finder to resolve the issue in favor of either side." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). Moreover, the summary judgment record establishes that the Plaintiff's version of events is implausible. "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987), citing Matsushita Elec. Indus. Co., 475 U.S. at 587). The Plaintiff, however, has not come forward with any such persuasive evidence.

Aside from this lack of an actionable dispute, the Plaintiff cannot prove that this fact is material. Wurie's statement does not controvert the undisputed material fact regarding Officer Taylor's perception of the Wurie vehicle at the time of the incident ---from Officer Taylor's vantage point, the Wurie vehicle appeared to have struck Officer Paillant thereby placing Officer Paillant in harm's way. See Defs. SOF at ¶¶ 51-62; Pl. Response at ¶¶ 51-62.[1] Moreover, Wurie's statement does not alter the conclusion that Officer Taylor had more than sufficient "probable cause to believe that the suspect pose[d] a threat of serious physical harm" to Officer Paillant and others, and accordingly, was entitled to exercise deadly force. See Tennessee v. Garner, 471 U.S. 1, 8-11 (1985).

Furthermore, the Plaintiff's conclusory assertion that the Wurie vehicle's contact with Officer Paillant was "accidental" lacks support from the record. There is no "definite, competent evidence" substantiating this assertion. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991), cert. denied, 504 U.S. 985 (1992). Moreover, such assertion is implausible in light of the summary judgment record. See Defs.' SOF at ¶ 44; see also Cal. Arch'l Bldg. Prods., Inc., supra at 1468, citing Matsushita Elec. Indus. Co., 475 U.S. at 587.

Given the absence of any genuine issue of material fact, Paragraphs 44-47 of the Plaintiff's Response must be stricken from the summary judgment record. See Anderson, supra at 248 (factual disputes irrelevant or unnecessary will not be counted). For essentially the same reasons that Paragraphs 44-47 should be stricken, so should Paragraphs 4-9, 11, 14-16, 26, 28, 32,35, 38, 43, 48, 63-66, 70, 76-77, and 81-83 of the Plaintiff's Response. The alleged disputed facts asserted by the Plaintiff therein are not of material value because they do not have the potential to impact the outcome of this case. Distilled to their essence, they are either immaterial

---

[1] Plaintiff's "dispute" in ¶ 59 is not material because the Plaintiff disputes mere semantics and merely clarifies that Taylor testified that he observed Wurie's vehicle "strike" rather than "collide with" Paillant.

4

or comprise a debate of semantics. Accordingly, for summary judgment purposes, they should be stricken. See Santiago-Ramos, supra at 52.

> **B.    The Additional Facts Offered By The Plaintiff Are Immaterial And Not Outcome Determinative To The Case At Bar.**
>
> **1. Paragraphs 2.1 Through 2.14 Of The Plaintiff's Statement Of Additional Undisputed Material Facts Should Be Stricken.**

In Paragraphs 2.1 through 2.14 of the Plaintiff's Statement of Additional Undisputed Material Facts, the Plaintiff seeks to add numerous facts regarding the shooting incident which are immaterial to the disposition of this case on summary judgment. None of these purported facts have the "potential to affect the outcome of the suit under the applicable law." Santiago-Ramos, supra at 52. Paragraph 2.1, for example, proffers evidence of a witness's feelings regarding whether Brima Wurie "want[ed] to hit Paillant." This evidence is not only unsupported speculation but wholly irrelevant.

In addition, the Plaintiff's assertions regarding several of these immaterial facts is inaccurate. In Paragraph 2.1, for example, the Plaintiff fails to include Travo Carter's additional testimony that the Wurie vehicle continued in Paillant's direction. See Pls. Exhibit I at 127:11-12 ("the car just kept on going."). Additionally, in Paragraph 2.4, the Plaintiff contends that Travo Carter observed Officer Paillant "get up off the ground immediately after he came in contact with the vehicle." The Plaintiff, however, fails to provide the entire factual context in which Carter makes this statement. Carter later states, for example, that he observed Officer Paillant remain on the ground for "seconds" after his contact with the vehicle. See Pls.Exhibit I at 52:15-16. The Plaintiff also omits Carter's additional testimony later in his deposition that he could not see the Wurie vehicle when shots were fired nor could he see where Officer Paillant was located. Id. at 132:11-15, 146:9-16.

### 2. Paragraphs 2.10 Through 2.12 Of The Plaintiff's Statement Of Additional Undisputed Material Facts Should Be Stricken.

Additionally, the Plaintiff offers evidence regarding his purported expert, a ballistician named John Murphy, that suggests that Murphy opined that Officer Taylor's "fourth shot" at the Wurie vehicle was a "straight-on shot." See ¶ 2.10. This fact, however, is not substantiated by the Plaintiff's citations to the record. See Pls. Exhibit K at 139:19-24; 140:1-5. Moreover, this evidence stems from inadmissible hearsay, a Boston Globe diagram that purportedly depicts the incident. See attached hereto Exhibit AA, Murphy's Deposition Transcript at 141-143; Exhibit BB, Boston Globe Graphic (described as "Exhibit B" in Murphy's deposition); see also Fed. R. Evid. 801 (prohibiting hearsay evidence).

Moreover, any such evidence offered by Murphy would be inadmissible at trial under the rule of Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S 579, 589 (1993) or Fed. R. Evid. 702. That rule requires the Court to act as gatekeeper, admitting expert opinion evidence only after first determining that the evidence is reliable. See also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). Here, Murphy's opinion evidence regarding the fourth shot as "straight-on" is not reliable because it is based on a on a Boston Globe diagram of the incident which he "assumed" was correct. See attached hereto Exhibit AA at 141-143. Murphy concedes that he does not know what data, if any, supported the depiction of the Globe graphic. See id. Certainly, reliance on a newspaper graphic does not satisfy the reliability prerequisite. See Daubert, supra at 589 (discussing reliability factors governing admission of expert opinion).

Similarly, Paragraph 2.12 should be stricken because it is not substantiated with reliable expert opinion. Murphy opines that at the time he fired the fourth shot, Officer Taylor "could have seen Paillant" but this statement is inaccurate. The Plaintiff fails to include in this assertion of fact Murphy's concession and proper context that in order for Officer Taylor to have seen

Officer Paillant while he was discharging his firearm, he would have had to move his eyes from his line of sight during the firearm discharge.  See Pl. Exhibit K at 173:14.[2]

3. **Paragraphs 2.15 Through 2.18 And Paragraphs 2.20 Through 2.24 Of The Plaintiff's Statement Of Additional Undisputed Material Facts Should Be Stricken.**

In her Statement of Additional Undisputed Material Facts, specifically, Paragraphs 2.15-2.18 and 2.23-2.24, the Plaintiff references the BPD's internal rule, Rule 303.  These references must be stricken because they are not only irrelevant, but also inadmissible under Fed. R. Evid. 404.  See Hochen v. Bobst Group, Inc., 193 F.R.D. 22, 24 (D. Mass. 2000).  Whether Officer Taylor violated any internal BPD rule or regulation is not relevant to determining whether he violated any constitutional right.  Furthermore, evidence of such a regulation is also inadmissible at trial.  See Hochen v. Bobst Group, Inc., 193 F.R.D. 22, 24 (D. Mass. 2000); see also Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012 (1984) (concluding, inter alia, that violation of a regulation does not preclude finding that officer's action were objectively reasonable under qualified immunity analysis); Soto v. Flores, 103 F.3d 1056, 1064 (1st Cir 1997).  Moreover, any evidence regarding the BPD's revised Rule 303 is immaterial because such Rule was not even in effect at the time of the 2002 incident.

Furthermore, any slight probative value of Rule 303, which Officer Taylor vehemently denies, is substantially outweighed by the danger that admission of such evidence would unfairly prejudice Officer Taylor, confuse the issues and/or the mislead of the jury.  Cf Superchi v. Town of Athol, 170 F.R.D. 3, 6 (D. Mass. 1996) (cross examination of officer regarding prior internal disciplinary rule violations against said officer was inadmissible because such evidence was

---

[2] For purposes of brevity, Officer Taylor did not file a separate Daubert motion.  Should the Court, however, deem it necessary that Officer Taylor file a separate motion under Daubert, Officer Taylor will do so.

"clearly" more prejudicial than probative).  Accordingly, all alleged facts regarding Rule 303 should be stricken.[3]

Reference to ¶ 2.18 should also be stricken because it is immaterial.  Any evidence regarding lay witness Arthur Stratford's alleged assertion that there existed a probability that Officer Taylor might have killed an innocent bystander during the incident is inadmissible as speculation.  As for Paragraphs 2.20-2.21, they are also irrelevant because they relate to Officer Flaherty's ruminations and feelings regarding the incident.  Such evidence has no bearing on any material issue, and accordingly, should be stricken.  Also, Paragraph 2.22 should be stricken because it is inaccurate.  A review of the exhibit cited by the Plaintiff does not substantiate the asserted fact.  See Pl. Response at ¶ 2.22, citing Plaintiff's Exhibit G at 119:6-13.

## IV.  CONCLUSION

For all of the foregoing reasons and for any others stated orally, the Defendants respectfully request that this Court allow Defendants' motion to strike.

**DEFENDANTS REQUEST ORAL ARGUMENT FOR THIS MOTION**

---

[3] Any evidence regarding Rule 303 is also immaterial because there is no Monell or any other claim against the Defendant City of Boston.

| | |
|---|---|
| **CERTIFICATE OF SERVICE**<br><br>I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 28, 2008.<br><br>/s/Helen G. Litsas<br>    Helen G. Litsas | Respectfully submitted,<br><br>DEFENDANT, THOMAS TAYLOR<br>By his attorneys:<br><br><br>/s/ Helen G. Litsas<br>Helen G. Litsas, BBO# 644848<br>Special Assistant Corporation Counsel<br>Law Office Of Helen G. Litsas<br>38 Main Street<br>Saugus, MA 01906<br>(781) 231-8090<br><br><br>/s/ Evan Ouellette<br>Evan C. Ouellette, BBO # 655934<br>Assistant Corporation Counsel<br>City of Boston Law Department<br>Room 615, City Hall<br>Boston, MA 02201<br>(617)635-4048 |

**7.1 Certification**

Pursuant to L.R. 7.1, I, Helen G. Litsas, certify that on July 28, 2008, I contacted Plaintiff's counsel and we were unable to narrow the issues prior to filing Defendant's motion to strike.

/s/Helen G. Litsas
   Helen G. Litsas

Case 1:05-cv-11803-MLW   Document 153-2   Filed 07/29/2008   Page 1 of 4

Page 1

**ORIGINAL**

VOLUME I
PAGES 1 TO 210
EXHIBITS 1 TO 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-11803MLW

SHENIA DANCY-STEWART, as           )
Administratrix of the              )
Estate of EVELINE                  )
BARROS-CEPEDA,                     )
                                   )
    Plaintiff,                     )
                                   )
vs.                                )
                                   )
THOMAS TAYLOR, JR., and            )
the CITY OF BOSTON,                )
                                   )
    Defendants.                    )

   DEPOSITION OF JOHN C. MURPHY, a witness called on behalf of the Defendants, pursuant to the Massachusetts Rules of Civil Procedure before Lisa Abdo, Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of City of Boston Law Department, City Hall, Room 615, Boston, Massachusetts, on Wednesday, March 26, 2008, commencing at 10:41 a.m.

G&M COURT REPORTERS, LTD.
1.800.655.3663 - www.gmcourtreporters.com

```
 1        made after the vehicle had made a turn?
 2    A.  Correct.
 3    Q.  Do you know how quickly it took the vehicle to make
 4        the turn from Dunkeld Street to Fayston Street?
 5    A.  I did not.
 6    Q.  Do you know -- strike that.
 7              Have you made any effort to determine the
 8        amount of time it took the vehicle to make the turn
 9        from Dunkeld Street to Fayston Street?
10    A.  I would have no way of knowing.
11    Q.  And why is that?
12    A.  I wasn't there.
13    Q.  You would agree with me that the amount of time it
14        took the vehicle to make the turn is an important
15        factor, correct?
16    A.  An important factor as to what?
17    Q.  In understanding what occurred that evening.
18    A.  I can't say.  I wasn't there.  I didn't see
19        the vehicle.  I don't know how fast it was
20        going.
21    Q.  And the basis for your determination as to where
22        Officer Taylor was located on Fayston Street is
23        based on what?
24    A.  On "B."
```

1   Q.   Exhibit B?
2   A.   Exhibit B.
3   Q.   And your conclusion as to the angle of the shots 1,
4        2, 3 and 4 as depicted in Exhibit B is based on
5        Exhibit B, correct?
6   A.   Exhibit A.
7   Q.   Excuse me. Exhibit A?
8   A.   And based on B, yes.
9   Q.   So your -- and I think you stated earlier that this
10       conclusion assumes that Exhibit A and Exhibit B are
11       correct?
12  A.   Correct.
13  Q.   And you don't know if they are, correct?
14  A.   I'm only assuming that they are.
15  Q.   So that's a no?
16  A.   That's a no.
17  Q.   Do you know how Exhibit B was created?
18  A.   How it was created?
19  Q.   Yes.
20  A.   I don't know.
21  Q.   Do you know on what information Exhibit B was
22       created?
23  A.   I do not.
24  Q.   Do you know what data was relied on for Exhibit B?

```
 1  A.  I do not.
 2  Q.  And Exhibit B, you would agree with me, is a
 3      diagram identified as a Globe staff graphic,
 4      correct?
 5  A.  Yes.
 6  Q.  It was a diagram published in The Boston Globe
 7      newspaper, correct?
 8  A.  Yes.
 9  Q.  And you don't know who the author is of that
10      diagram other than what's identified as David
11      Butler in the diagram, correct?
12  A.  It says, "Courtesy of Suffolk District
13      Attorney," so I'm assuming they generated the
14      diagram.
15  Q.  You're assuming that they generated the diagram?
16  A.  I'm guessing, but...
17  Q.  Do you know what data was generated by the Suffolk
18      County district attorney's office with respect to
19      this graphic?
20  A.  No, I do not.
21  Q.  Did you ever have an opportunity to review the file
22      of the Suffolk County district attorney's office?
23  A.  No.
24  Q.  Have you ever spoken to the Suffolk County district
```

# Shooting scene

The Suffolk district attorney's office issued its report yesterday on the shooting of Eveline Barros-Cepeda.



Barros-Cepeda was shot Sept. 8, 2002 by patrolman Thomas Taylor of the Boston Police. She was a passenger in a car that struck Taylor's partner and drove away.

1. Police pursue a Ford Taurus that had been involved in an attempted shooting.

2. Patrolman Michael Paillant stands at the end of Dunkeld Street in front of the Taurus.

3. The Taurus hits Paillant and turns right onto Fayston Street.

4. Paillant's partner, Taylor, fires into the fleeing car, killing Barros-Cepeda.

STREET DRAWING COURTESY SUFFOLK D.A.

**OCCUPANTS OF THE TAURUS**



Carlos Fernandes, Luis Carvalho, Eveline Barros-Cepeda, Brima Wurie, Maria DaRosa

GLOBE STAFF GRAPHIC/ DAVID BUTLER

EXHIBIT B